PATRICK KEELEY *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Suffolk.   May 17, 1906. — June 21, 1906.

Present: KNOWLTON, C. J., MORTON, LATHROP, HAMMOND, & LORING, JJ.

*Negligence.   Elevated Railway.*

In an action against an elevated railway company, which operated its elevated trains by means of a third rail transmitting electric power, for personal injuries incurred by the plaintiff while working as a night laborer with a large gang of workmen in relaying about five hundred feet of the defendant's north bound track, it appeared, that the plaintiff was injured from being burned by a flash of electricity when in compliance with an order of his foreman he struck the third rail with a long bladed hammer, called a chisel, that the accident happened about half past four o'clock in the morning, that the electric power usually was turned off the rail between the morning hours of one and five o'clock, when the trains did not run and the night gangs were at work on the tracks, that on the night of the accident the men were instructed when they went to work at one o'clock that the third rail was dead, that this was true, but that during the night the power was turned on for about one half the length of the job including the place where the plaintiff was at work, that this was done for the purpose of picking up some old rails on the south bound track by means of a working train, that for this purpose it was unnecessary to turn on the power on the north bound track which was being relaid, because the old rails could have been reached wholly by the south bound track, that some of the men were told in a general way that a portion of the rail was alive but the plaintiff was not so informed, and the evidence was conflicting as to whether the foreman under whom he worked was so informed, that at the time the plaintiff was injured he was assisting to remove a rail saw from one of the rails of the track within a few inches of the third rail, and in the performance of his work was ordered by the foreman to strike a blow with the chisel, which the foreman handed to him for the purpose, the use of which necessitated hitting the third rail, that he asked the foreman whether it was all right, and the foreman answered that the rail was dead, and the accident followed, that the defendant's engineer and foreman in control of the power had full knowledge that a large job was to be done that night, that it would have been an easy matter and a reasonable precaution to make the third rail dead along the whole portion of the track which was undergoing repairs, and that the defendant's chief operator received no orders that night to make the third rail dead. *Held,* that the jury were warranted in finding that the plaintiff was in the exercise of due care; that the plaintiff did not assume the risk of the unnecessary and concealed danger in the place where he was set at work; and that there was evidence of negligence on the part of the defendant in turning on the power on the north bound track when the south bound track could have been used for the running of the working train.

LATHROP, J.   This is an action of tort for personal injuries sustained by the plaintiff while in the employ of the defendant.

The declaration contained several counts, some at common law, and some under the R. L. c. 106, § 71. In the Superior Court the jury returned a verdict for the plaintiff on the second count, which alleged in substance that the plaintiff was set to work in a dangerous place, and while in the exercise of due care, and without being warned of the danger, was injured. At the close of the evidence the defendant asked the judge to rule that upon all the evidence the plaintiff could not recover. The judge refused so to rule and submitted the case to the jury, under instructions which we must assume to have been correct. The only exception is to the refusal to rule as requested.

The jury were warranted from the evidence in finding the following facts.

The plaintiff, employed by the defendant as a night laborer, was set at work as a member of a large gang of workmen, to assist in relaying about five hundred feet of the defendant's north bound track on its elevated structure on Washington Street, near Rollins Street, Boston. While so employed, and when working near the third rail, so called, where he was directed to work, he was seriously injured by burns from a flash of electricity, caused by his chisel coming in contact with this rail, which at the time the defendant permitted to be alive.

The accident occurred at about half past four o'clock on the morning of March 20, 1902. The electric power used to operate the trains on the tracks ran through the third rail, and was generally turned off the rail between the morning hours of one o'clock and five o'clock, at which time the trains did not run, and the night gangs were at work on the tracks. The voltage used in the third rail was from five hundred to six hundred volts, and the amperage was very large ; the burning effect is from the amperage ; a person could be killed by a voltage of five hundred volts. The electricity in the third rail could be turned on or shut off, from either or both tracks, entirely at the will or control of the defendant, by switches at the power stations at Sullivan Square or Atlantic Avenue, or locally from either track by switches placed from four hundred to five hundred feet apart. The turning of the switches at Rollins Street and at Castle Street would have rendered the rail dead at the point of the accident, as it also could have been made dead from

the power station.   These local switches were under the control of the defendant's engineer, who testified that he knew of no reason for the use of the power on that night, between those streets.

It was also in evidence that an appliance termed a jumper was in common use at the time of the accident, by which the power could have been cut off from the rail for any assigned distance, even the length of a single rail, along the track, and the third rail made harmless; that the appliance used for this purpose could be handled by any one of ordinary intelligence.   The defendant kept for use, when working near the third rail during the day, rubber blankets to throw over the rail, and the electricians at times used test lamps to ascertain whether the power was off or on.   The workmen always had general instructions that the power was off while they were at work at night, and each morning about five o'clock one of the engineers would come around and state that the power was about to be turned on.

The defendant's engineers and foremen, having control of the power, had full knowledge that a large job was to be done that night.   Preparations were being made for some days before the work was done to replace about five hundred feet of track; new rails had been brought to the place some days before and placed between the tracks, and in order to reduce the amount of work to be done on the night of relaying them the new rails had been assembled, that is, joined together in sections of three.   To insure the completion of the work in one night, all three of the gangs, ordinarily employed in different places on the structure and in the subway, were consolidated and set to work together under the foreman of the plaintiff's gang.

It would have been an easy matter and a reasonable precaution to make the third rail dead along the whole distance which was undergoing repairs.   This was the unanimous opinion of the defendant's engineers and managers.   The defendant's chief operator received no orders on that night to make the third rail dead.   Telephones were in use between the various stations on the structure and to the power houses.

On the night the plaintiff incurred his injuries the men were instructed, when they went to work at one o'clock, that the third rail was dead.   The defendant's records show that the third rails

on both tracks were dead at 1.10 A. M.  During the night instructions came from Sullivan Square to the electrician in charge of that section where the work was going on, to open the switches at Castle Street, which had the effect of putting the power on to the third rail for about half the length of the job.  Some of the men were told in a general way that a portion of the rail was alive.  The plaintiff was not so informed.  The evidence was conflicting as to whether the foreman, Hellen, was so informed.  The electrician placed a red lantern at the point of the dividing line between the live and dead rail, but the red lantern would indicate nothing to any one as to which side of the lantern the rail was alive and dangerous.  The plaintiff did not see the lantern which, being at Rollins Street, must have been about two hundred and fifty feet from the place of the accident.

The cause of turning on the power at Castle Street was to let a work train go over the cross over at Castle Street to pick up some old rails on the south bound track at Pelham Street and Northampton Street.  It was not necessary that the power should have been turned on there for that purpose because, by using the south bound track through the subway, no occasion existed for any power to be applied to the third rail of the north bound track.  The chief operator at the power station testified that it would have been an easy matter to keep the rails dead, and that he received no orders to make them dead on that night.

At the time the plaintiff was injured he was assisting to remove a rail saw from one of the running rails within a few inches of the third rail, and in the performance of his work was directed by his foreman to strike a blow with a chisel (a long-bladed hammer) handed to him by the foreman for the purpose, the use of which necessitated his hitting the third rail.  He asked the foreman if it was all right, and in response the foreman told him the rail was dead.  The plaintiff had no knowledge of the manner of using the power in the third rail or as to the switches used for that purpose.  He had no personal knowledge of whether the power was on the rail or off, except that he was told it was off.

On these facts we can have no doubt that the jury were warranted in finding that the plaintiff was in the exercise of due care; and that it cannot be said, as matter of law, that the

plaintiff assumed the risk.   Nor can we have any doubt that the defendant was negligent in turning on the power on the north bound track when the south bound track could have been used for the running of the working train.   The law applicable to this subject is well stated by Mr. Justice Knowlton in *Hopkins v. O'Leary*, 176 Mass. 258, 264, as follows : " The general duty to provide a place for the plaintiff which was reasonably safe, having reference to the kind of business in which the defendant was engaged, was so far personal to himself as a master that he could not escape responsibility by delegating it to another. *Toy v. United States Cartridge Co.* 159 Mass. 313.   While the plaintiff assumed the obvious risks of the business, he did not assume the risk from the failure of the defendant, either personally or through a superintendent, to perform the ordinary duties of an employer in providing against unnecessary or concealed dangers in places in which laborers were set to work. The jury were rightly permitted to pass upon the question whether the defendant was negligent in this particular.   *Rogers v. Ludlow Manuf. Co.* 144 Mass. 198, 205.   *Neveu v. Sears*, 155 Mass. 303.   *O'Driscoll* v. *Faxon*, 156 Mass. 527.   *Coan* v. *Marlborough*, 164 Mass. 206.   *Burgess* v. *Davis Sulphur Ore Co.* 165 Mass. 71.   *Dean* v. *Smith*, 169 Mass. 569."

This rule applies to corporations as well as to individuals. *Rogers v. Ludlow Manuf. Co.* 144 Mass. 198, 201, *et seq.*   *Toy* v. *United States Cartridge Co.* 159 Mass. 313.   *Burgess* v. *Davis Sulphur Ore Co.* 165 Mass. 71.

While there was conflicting evidence on the question whether the foreman of the plaintiff's gang had been informed that the power had been turned on, the jury may have found that he had not been so informed.   If so, and he supposed that the rail was dead, the order to the plaintiff was not a negligent one ; and the negligence might well be found to be that of some one representing the company, to whom the defendant had entrusted the work, in allowing the power to be turned on to the third rail of the north bound track, and for whose negligence the defendant is liable.

*Exceptions overruled.*

*R. A. Sears, J. F. Sweeney & H. A. Wilson*, for the defendant. *W. B. Grant*, for the plaintiff.