MARY HINES *vs.* STANLEY G. I. ELECTRIC MANUFACTURING
COMPANY.

MARY HINES, administratrix, *vs.* SAME.

Berkshire.    September 14, 1909. — October 19,·1909.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Evidence,* Presumptions and burden of proof, Negative testimony, Opinion: experts, Experiments.    *Custom.    Negligence,* Employer's liability.

Where it is material to show that a caretaker in charge of a yard of a manufacturing corporation, who was run down and killed by a switching engine operated in the yard, knew of a custom to ring the bell whenever the engine was started, it is not necessary to show such knowledge by direct testimony, because it may be assumed from the fact that the deceased was the caretaker of the yard that he had a general knowledge of the way in which the business of the yard was carried on, and, the existence of such a custom having been proved, an inference that he knew of the custom is warranted.

Upon the issue of the due care of a caretaker in charge of a yard of a manufacturing corporation, who was run down and killed by a switching engine operated in the yard, although, if unexplained, it would be conclusive evidence of the negligence of the deceased to show that he placed himself upon the track with his back to the engine and a short distance from it without taking any precautions for his safety when he knew that the engine was likely to move toward him at any time, yet, if it further is shown that in doing this he relied on a custom to ring the bell whenever the engine was started, the question of his due care is one to be determined by the jury.

Upon the issue whether an engineer operating a switching engine in the yard of a manufacturing corporation, where it was customary to ring the bell whenever the engine was started, started the engine without ringing the bell, and therefore was negligent in running down and killing a caretaker in charge of the yard, the fact that some of the testimony relied on to show that the bell was not rung is negative in form does not render it worthless, and only affects its weight, which depends on the degree of attention which the witnesses are shown to have paid at the time to the ringing or not ringing of the bell and is a matter to be passed upon by the jury.

Upon the issue whether a person run over and killed by a switching engine experienced conscious suffering before his death, a physician, who saw the body of the deceased after his death but only a short time after the accident happened, may be permitted to testify that in his opinion the deceased suffered consciously.

At the trial of an action against a manufacturing corporation for causing the death of a caretaker in charge of its yard, who while at work there was run down by a switching engine belonging to the defendant, upon the question how close to his engine the engineer in charge of the engine could see the rails of the track behind his engine, which was moving backward, the witnesses answered questions which were confined to what they had observed in that respect in regard to the engine which was in use at the time of the accident.    On cross-examination it turned out

that they had made no measurements of that engine but that the measurements which they had made were of another engine of the same type and dimensions. *Held*, that this did not render inadmissible the evidence of what the witnesses actually had observed in connection with the engine in use at the time of the accident, and that the weight of the testimony depended on the similarity of the conditions which existed at the time when the observations were made to those which existed at the time when the accident occurred, which was to be determined by the jury.

MORTON, J.   These cases were before this court on exceptions by the plaintiff to a ruling at the close of the plaintiff's evidence directing verdicts for the defendant and are reported in 199 Mass. 522.   The exceptions were sustained.   There has been a new trial at which a verdict was returned for the plaintiff in each case, and the cases are now here on exceptions by the defendant to the refusal of the presiding judge * to give certain rulings requested and to the admission of certain evidence.   Most of the rulings requested, thirty-eight in number, were refused.

The issues at this trial were substantially the same as they were at the former trial, and related, except as to matters of evidence, to the due care of the deceased and the negligence of the engineer.   It was held, when the cases were here before, that the defendant was liable for the engineer's negligence, and that there was evidence for the jury as to the due care of the deceased and the negligence of the engineer.   The evidence at this trial in regard to the due care of the deceased and the negligence of the engineer was certainly as favorable to the plaintiff as it was at the other trial, and, though evidence was introduced by the defendant which tended to contradict that introduced by the plaintiff, it is difficult to see how such evidence could have had any other effect as matter of law than to show that the questions of due care and negligence were eminently ones for the jury. There was evidence at this trial as there was at the other trial that it was customary to ring the bell whenever the engine was started.   Indeed, the testimony of the defendant's superintendent, who was called as a witness by the plaintiff, would seem to have left no doubt on that point.   There was no direct testimony that the deceased knew of this custom.   But he was caretaker of the yard, with a general knowledge, it may be assumed, of the way in which the business of the yard was carried on, and it would

* *Crosby*, J.

not have been an unwarrantable inference, therefore, that he knew of the custom. If he knew of the custom, then, as was said in substance in *Davis* v. *New York, New Haven, & Hartford Railroad*, 159 Mass. 532, he had a right to depend on his knowledge to some extent, and the jury " might take the fact into account in connection with the evidence that on this occasion no signal was given, as bearing on his care."

The fact that he had been cautioned by the superintendent to look out for the cars was only one circumstance to be considered with all of the other circumstances in passing upon the question of his due care. Whether the place where the engine stood was on or near a crossing, as that word was used with reference to places in the yard, was for the jury to decide if they deemed it material. As was said in the former opinion, for the deceased to have placed himself upon the track back to the engine a short distance from it without taking any precautions for his safety when he knew that the engine was liable to move towards him at any time, would, if that were all, have been negligence on his part. But his conduct could well be found to have been affected by knowledge of the custom to ring the bell when the engine was started, and, in that and in other respects, the case is distinguishable from *Aerkfetz* v. *Humphreys*, 145 U. S. 418, and other cases relied on by the defendant. The place where the accident occurred was not the yard or crossing of a steam railroad which are recognized as places of great danger and which require a corresponding degree of care on the part of those exposed to such dangers, but was the yard of a manufacturing company in which an engine was used to facilitate transportation from one part of the yard to another under circumstances which warranted those at work in the yard in relying to a great degree upon the fact that, whenever, for any reason, the engine was to be started, a warning or signal would be given so that those at work in the yard might be thereby enabled to take precautions for their safety, and to do their work in reliance upon the fact that a signal would be given and, if given, would in all probability be heard by them. It could not have been properly ruled, as requested by the defendant, that the deceased was not, as matter of law, in the exercise of due care.

In reference to the negligence of the engineer there was testi-

mony tending to show that he started the engine without ring-
ing the bell and without taking any precautions to ascertain
whether there was any one on the track behind the engine. The
various arguments and considerations relied on by the defendant
to show that there was no negligence on the part of the engineer
and that from the position of the deceased he did not see him and
could not have seen him were proper to be weighed by the jury
but did not warrant a ruling that, as matter of law, there was
no evidence justifying a finding that the engineer was negligent.
The fact that some of the testimony relied on to show that the
bell was not rung was negative rather than affirmative in form
did not necessarily render it worthless.   The weight to be given
to such testimony would depend on the degree of attention which
the witness was shown to have paid at the time to the ringing
or not ringing of the bell.   And that was a matter, like the at-
tempted impeachment by the defendant of the plaintiff's wit-
ness Baction, for the jury to pass upon.   However conclusive to
the defendant and its counsel the proposition, that the engineer
could not see the deceased, might appear to be, it was and is
in the nature of an argument rather than of an irrefutable
demonstration.

It was intimated in the former opinion that the testimony of
the physician as to the conscious suffering of the deceased was
admissible.   The physician was permitted to testify at this trial
that in his opinion the deceased suffered consciously.   The de-
fendant contends that the opinion thus expressed was based on
hearsay evidence and unwarranted assumptions, and was, there-
fore, inadmissible.   But the physician testified that he saw the
deceased shortly after the accident happened, though not till
after his death, and we think that the fair import of his testi-
mony was that the opinion which he expressed was the result of
his own observations based on assumptions that were properly
included in the questions that were put to him.

The evidence as to how close to the engine the engineer could
see, from where he stood, the rails behind * the engine, which

---

* The engine was backing down when it struck the deceased, and the
engineer was in the cab of the engine.   The question as finally admitted
subject to the plaintiff's exception was, " Standing on this platform in the
cab of this engine on the engineer's side looking back over the rear of the

was excepted to by the defendant was, we think, properly admitted. As the questions were finally put and answered they were confined to what the witnesses had observed in that respect in regard to the engine which was in use at the time of the accident, and, though on cross-examination it turned out that they had made no measurements of that engine, but that the measurements which they had made were of another engine of the same type and dimensions, this did not render inadmissible evidence of what they had actually observed in connection with the engine in use at the time of the accident. The weight to be given to the evidence depended on the similarity of the conditions which existed at the times when the observations were made to those which existed at the time when the accident occurred, and that was plainly for the jury.

The cases were tried and submitted to the jury on what are termed the amended declarations. The jury were fully instructed that in order to recover the plaintiff was bound to satisfy them by a fair preponderance of the evidence that the deceased was in the exercise of due care, and that the engineer was negligent and that the accident was due to his negligence. They were further instructed at the defendant's request that if the deceased was standing on the track in such a position that the engineer was unable to see him, then the engineer was not negligent in not ringing the bell before starting the engine and their verdict should be for the defendant. This was, to say the least, sufficiently favorable for the defendant. It could not be ruled as matter of law as requested by the defendant that because the defendant was left to do the work of taking care of the yard as and when he saw fit, and chose to do the work of cleaning the culvert in the manner and under the circumstances which he did, that he was not in the exercise of due care. It was a question for the jury and it was for them to say, as they

---

tender at a time when the engine was in the same condition as it was before it was delivered to the Stanley people and after it came back to the New York Central people from the Stanley people, how near to the engine have you seen the rails of the track?" The answer as finally admitted subject to a like exception was, "You could see the track sixteen or eighteen feet from the end of the tender standing up on the engineer's seat. Q. That is on the engineer's platform? A. Yes, sir."

were instructed, " whether or not he was at the time he was at work at this culvert or sluiceway in cleaning it out, in view of the situation and all the surrounding circumstances in the exercise of due care."  The jury have found that he was in the exercise of due care and there clearly was evidence warranting such a finding.  Neither could it be ruled as requested by the defendant that under the instructions given by the superintendent to the deceased to look out for the cars when working around the yard he had no right to rely upon the ringing of the bell or any other signal and assumed the risk of the accident which caused his death.  The fact that such instructions were given to him constituted as already observed one circumstance to be considered in connection with all the other circumstances in passing upon the question of the due care of the deceased.

We do not deem it necessary to consider *seriatim* the instructions that were requested and refused.  Some of them, as for instance the one that " The jury must find on all the evidence in the case that the engineer did not and could not have seen Hines when he started his engine," related purely to a matter of fact, and others as we have seen were incorrect as matter of law.  The trouble with the defendant's case is, that the jury has settled the facts against it on evidence which warranted them in so doing.  We see no error in the manner in which the court dealt with the case.

*Exceptions overruled.*

*C. H. Wright,* for the defendant.
*J. F. Noxon,* for the plaintiff.