JEFFREY D. LAWLER *vs.* GENERAL ELECTRIC COMPANY.

Hampden.    March 13, 1973. — April 12, 1973.

Present: HALE, C.J., ROSE, & GOODMAN, JJ.

*Negligence,* Electricity, Toward employee of independent contractor, Duty to warn.

In an action by an employee of an independent contractor against the owner of a building undergoing remodeling for injuries sustained when the plaintiff received an electrical shock from non-insulated wires near an "I" beam on which he was walking and he fell to the main floor, a finding of negligence on the part of the defendant was not warranted where it appeared that the plaintiff had been employed intermittently in the building for more than two weeks and knew of the location of the wires and of the defendant's safety procedure as indicated by the presence or absence of a red tag on the circuit box, and that on the day of the accident the plaintiff did not inspect the circuit box; the fact that the electricity had not been turned on for two weeks preceding the accident, during which period the red tag procedure remained in effect, imposed no additional duty on the defendant to warn the plaintiff of danger. [221-224]

TORT. Writ in the Superior Court dated October 2, 1968. The action was tried before *Tisdale,* J.

*Leonard S. Michelman* for the plaintiff.

*Charles K. Bergin, Jr.,* for the defendant.

HALE, C.J.    By this action of tort for negligence, the plaintiff seeks to recover damages as the result of an injury incurred while working on the defendant's premises. The case was tried in the Superior Court before a judge and a jury. At the conclusion of the plaintiff's case, the defendant filed a motion for a directed verdict which was allowed. The

plaintiff is here on his exception to the allowance of the defendant's motion.

The evidence in its aspect most favorable to the plaintiff is as follows. The defendant is the owner of a manufacturing building which was being converted into a two-floor office building. The plaintiff was an employee of the subcontractor engaged in the remodeling work. The interior of the building in which the plaintiff was employed was open from the first floor to the ceiling and was being converted into an office building by the installation of a second floor. In the upper part of the building, a large "I" beam ran along the wall of the structure. There was a track on top of this beam along which an overhead moving crane could be operated. This crane formerly had been operable over the length of the building but by reason of the progress of the remodeling work was limited in its range to ten to twelve feet. On the wall above the beam there were three non-insulated wires which carried 440 volts when the switch from the electrical power source was closed. These wires were the source of power to operate the crane. The lowest of the three wires was about three feet above the top of the track.

A specific procedure was to be followed when the switch which energized the crane was to be turned on or off. Each of the several contractors working on the site had red tags. The procedure required that the red tags be put on the circuit box to indicate that the electricity was off. If the red tags were not on the box, then the electricity could be turned on. Thus, before the electricity could be turned on, the contractors whose red tags appeared on the box had to be informed so they could remove their tags. In this way each subcontractor could notify its employees before the wires were energized. The plaintiff knew the nature of this safety procedure.

The plaintiff had worked in the area of the crane intermittently for over two weeks prior to his injury on Monday, June 19, 1967. During this period the power had been off. On one occasion, about two weeks prior to his injury, he touched the wires which were not then energized. The plaintiff had worked in an area beneath the wires all

day on Friday, June 16, 1967, and did not see the crane operating on that day. When the plaintiff came to work on Monday, June 19, 1967, the crane was in the same position as it had been when he left at 4:00 P.M. on the preceding Friday. He did not check the switch box on Monday morning because he had been told that the crane had been permanently turned off and that in the event it was turned on again everyone on the job would be notified.[1] The switch had been closed and the wires energized late on Friday in order to move the crane so that plumbers could have access to a valve.

Just prior to his injury, the plaintiff had been working on a level area about twelve feet above the main floor of the building and below the "I" beam. He was directed to obtain a saw from carpenters who were working at the same level. There was about twenty feet of space open to the main floor between the plaintiff and where the carpenters were working. The plaintiff could have gone down a ladder to the main floor, crossed over to another ladder, and climbed up to where the carpenters were working. He felt it more convenient, however, to climb up to the "I" beam (on which the crane tracks were located and which was about eight feet above where the plaintiff was working) and cross over to the carpenters. He climbed up to the "I" beam, uprighted himself, took two or three steps, and felt an electrical shock in his right arm. Stunned, he fell about twenty feet to the floor and was severely injured.

The plaintiff argues that the highly dangerous character of electricity requires that the defendant be held to a correspondingly high degree of care in its use. *O'Donnell* v. *Boston Elevated Railway,* 205 Mass. 200, 202. The application of this doctrine is limited to those cases where the victim of the accident was, in relation to the defendant, a member of the general public. See *Gelinas* v. *New England Power Co.* 359 Mass. 119; *Rasmussen* v. *Fitchburg Gas & Electric Light Co.* 343 Mass. 515. Where one invites the

---

[1] The record does not disclose the source of this information.

employee of an independent contractor or subcontractor to perform work on his premises, he owes him the same duty he owes to his own employees, *Williams* v. *United Men's Shop, Inc.* 317 Mass. 319, 320; *Sparks* v. *Kepnes,* 339 Mass. 349, 351, viz., to disclose to the employee hidden defects of which the employer knows or, in the exercise of reasonable care, should know. *Gallo* v. *Leahy,* 297 Mass. 265, 268. There is no duty to warn of dangers that are obvious or could be discovered by reasonable inspection by the employee. *Hannon* v. *Hayes-Bickford Lunch System, Inc.* 336 Mass. 268, 272-273. See *Darcey* v. *Lord & Burnham Co.* 320 Mass. 371, 374-375.

In *Burr* v. *Massachusetts Electric Co.* 356 Mass. 144, the plaintiff's intestate, an employee of an independent contractor hired by the defendant to trim trees, was electrocuted when he came in contact with a "live" wire. The defendant never warned the tree trimmers that the wires were "live," nor were there signs on the poles indicating such a condition. Nevertheless, the court held that there was "no duty to warn of dangers which are obvious or could have been discovered by reasonable inspection." *Id.* at 147. In the present case, a well-defined procedure had been agreed to by the contractors in the event the crane wires were energized. The plaintiff knew this procedure, and a reasonable inspection of the switch box would have revealed the danger.

The plaintiff, in attempting to distinguish the present case, relies on the fact that the switch to the crane wires had not been turned on for a period of two weeks prior to June 16. He argues that, irrespective of the red tag procedure, once the crane was turned on a duty arose on the defendant to warn all of the employees of the danger. We disagree. The plaintiff's theory assumes that the passage of this two-week period effectively transformed an open and obvious danger into a hidden defect. The plaintiff cannot ignore the fact that the red tag safety procedure was in effect during this time, indicating that the danger remained open and obvious. There was no reason for the defendant to believe that an additional warning was needed. See *Haley* v. *Allied*

*Chemical Corp.* 353 Mass. 325, 330. Moreover, we are convinced that the holding in *Burr* v. *Massachusetts Electric Co., supra,* disposes of the plaintiff's theory on these facts. "Burr knew of the existence and location of the wires; and even if not warned of their danger, he should have realized that they might be energized." *Id.* at 147. The motion for a directed verdict was properly allowed.

*Exceptions overruled.*