Michael KUKURUZA,
Plaintiff-Appellee,

v.

GENERAL ELECTRIC COMPANY,
Defendant-Appellant.

No. 74–1247.

United States Court of Appeals,
First Circuit.

Argued Nov. 6, 1974.

Decided Feb. 14, 1975.

Walter G. Murphy, Boston, Mass., with whom Murphy & Mitchell, Boston, Mass., was on brief, for defendant-appellant.

Albert P. Zabin, Boston, Mass., with whom Schneider, Reilly, Zabin & Connolly, P.C., Boston, Mass., was on brief, for plaintiff-appellee.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

McENTEE, Circuit Judge.

Defendant General Electric Company appeals from a judgment for $175,301 entered against it following a verdict for plaintiff Kukuruza, who was severely injured when he fell from an overhead crane in a GE plant. Most of the facts were sharply disputed, but the relevant evidence is as follows: Kukuruza was an employee of W. T. Kenney Company,

which entered into a contract with GE to paint the ceilings in the main floor, the walls, and the main bay crane at the GE plant in Medford, Massachusetts. It was stipulated that at the time of his fall Kukuruza was engaged as an employee of an independent contractor. Before the work began on November 29, 1968, George Caracostas, GE's plant and safety engineer at the Medford plant, spoke with Edward Kenney, secretary-treasurer of W. T. Kenney Company, and James Kenney, a foreman, about safety procedures. He explained that when the crane was to be worked on the GE safety procedure was to shut off its power by throwing the switch, to remove the fuses, and to tie a red tag across the handle warning that the switch could only be closed by the person who had signed the red tag. Caracostas told the Kenneys that the Kenney employees were never to touch the switch. Though Edward Kenney confirmed that he and James Kenney received these instructions, and though he testified that he instructed his foreman to relay them to the Kenney workers, Kukuruza testified that he was not told anything about the red tag procedures.

The overhead crane from which plaintiff fell travels on two horizontal and parallel I beams. There were electric cables on the crane and along its I beams. Plaintiff testified that he knew these were bare copper wires and thus dangerous. On December 2, 1968, plaintiff had put a primer coat of paint on the crane. On December 10, his second day at the job site, he had climbed up a ladder to the crane and begun assembling his staging. At that point someone told him to come down so the crane could be used. When hollers to put on the power were heard, George Roundbehler, the Kenney foreman, pointed out the switch and told Kukuruza to put the power on. Plaintiff did so and testified he observed no red tag. The crane was used for a while, according to testimony of some of Kukuruza's coworkers, but the period of time was variously stated as at least 15–20 minutes and at least an hour. Edward Kenney testified that

when he left the plant at 4:15 p. m. that day, before plaintiff's fall, he saw that the red tag was on the switch and it was shut down. Caracostas also testified he looked at the switch after the accident and it was red-tagged and the fuses were on the bench.

The plaintiff testified that GE workers, after they had finished with the crane, told him it was all right to use the crane; but he could not identify these workers more specifically. A number of GE workers testified they did not hear anyone tell him it was safe to go back up. He then put his ladder against the catwalk and climbed up to the crane again. He stated that he took no steps to check whether the power was off. Before the interruption plaintiff, a licensed rigger, had placed three planks, six feet long, so that they extended from one I beam to the other and rested on the flanges. He had also brought up a toothpick, which is a staging device shaped like an aluminum ladder with plywood covering the rungs but with exposed aluminum sides. When plaintiff reached the staging area after the interruption, he put the toothpick on top of the three planks to use as a walking plank and tied the toothpick with a rope to a pipe or angle iron so that it was touching one end of the crane. Then he put his left foot on the flange of the I beam, leaving his right foot on the toothpick, and reached over the I beam for his paint. As he put his hands on the I beam, he stated that he got a jolt, stiffened out, and fell. This account by the plaintiff of how the accident happened was sharply disputed by a number of GE employees who testified that they had seen him pushing a board with one foot shortly before the fall. The plaintiff's answers to interrogatories had also stated, in essence, that the accident had occurred because he slipped on improper planking. The rest of the facts are stated as needed in the opinion.

■ We begin our consideration of the errors alleged by defendant by examining whether the expert testimony of one Galagan, a consulting electrical engi-

neer, who testified to having specialized knowledge on "high voltage hazards" and "electric shocks," was properly admitted. Plaintiff had testified he felt a "jolt" and stiffened up just before he fell, and Galagan was allowed to testify, over objection, that from plaintiff's version it "sounded like" and "appeared to me" that plaintiff received a high-impedance shock "of short duration but sufficient to cause surprise that he got the shock and caused the involuntary movement on his part." Galagan further testified that the "most likely cause of the shock" was a "potential difference," that is, a difference in voltage between the plaintiff himself and the part of the crane he touched. In his opinion the probable cause of this potential difference was current leakage through the insulation of the wiring or around the terminal blocks or around the terminals of the motor.

Defendant objected to use of the word "shock," on the ground that the word "jolt" used by plaintiff did not permit a clear inference that the sensation plaintiff felt was electrically induced. But Galagan's qualifications were adequate to allow him to express an opinion that plaintiff's "jolt" under the circumstances described an electric shock. *See* Cain v. Southern Massachusetts Tel. Co., 219 Mass. 504, 107 N.E. 380 (1914).

Galagan based his testimony in part on the wiring diagrams of the crane and upon his examination of the crane some 5½ years after the accident. Defendant objects that this evidence was admissible only if the trial judge first found that the condition of the crane was substantially identical at the time of the accident and the time of the inspection, and that plaintiff had the burden of proving this substantial identity. At most the trial judge needed only to conclude that a prima facie showing of substantial identity had been made, since the weight to be given to the evidence about the similarity of the conditions was plainly for the jury. Hines v. Stanley G. I. Electric Mfg. Co., 203 Mass. 288, 292, 89 N.E. 628, 630 (1909). The trial judge implicitly found substantial identity when after a bench conference he refused a motion to strike Galagan's testimony. At the bench conference counsel for defendant conceded the accuracy of the wiring diagrams upon which Galagan relied in part, and he stated that no relevant differences in the crane were known to him. *Cf.* Guinan v. Famous Players-Lasky Corp., 267 Mass. 501, 522, 167 N.E. 235, 245 (1929) (jury view). Moreover, GE's manager later testified that at the relevant times the crane was substantially the same electrically. Since defendant offered no evidence to show dissimilarity, *e. g.,* Lee v. Commonwealth, 1972 Mass.Adv.Sh. 646, 281 N.E.2d 239, it was not prejudiced by the trial court's refusal to strike Galagan's testimony for this reason.

Defendant's last theory to exclude Galagan's testimony was that since he made no tests to determine whether any potential difference actually existed and since he could not say whether there was any leakage either at the time of the accident or at the time of his examination, his testimony was mere speculation and hence inadmissible. Defendant's principle that "mere guesswork masquerading as expert testimony must be stricken" is sound, but the cases to which he analogizes the instant case are distinguishable.[1]

---

1. In Kennedy v. U-Haul Co., 1971 Mass. Adv.Sh. 1211, 271 N.E.2d 346, the expert witness was not familiar with plastic to any great extent and yet he testified that a cap in the truck braking system was negligently designed because it was made of plastic. No claim is made here that Galagan was unfamiliar with electrical matters, such as circuitry and potential differences.

In *King's Case,* 352 Mass. 488, 225 N.E.2d 900 (1967), there was no evidence that the employee's death was causally related to his accident except the expert's testimony. That testimony only established that it was mathematically more likely that there was a causal relation. But it was held that mathematical probability alone was insufficient to prove a conclusion by a preponderance of the evidence. Mathematical probabilities, however, are not at issue in this case.

Dolan v. Suffolk Franklin Savings Bank, 355 Mass. 665, 246 N.E.2d 798 (1969), is clear-

Nass v. Duxbury, 327 Mass. 396, 99 N.E.2d 54 (1951), is the case most helpful to GE. In *Nass* the expert witness's testimony that the sand defendant dumped on the beach would have changed the channel of the river was dismissed as insufficient to sustain a verdict for plaintiff because, among other inadequacies, there was no evidence in the case "that the sand allegedly in the channel was of the same texture or composition as that on the defendant's beach." 327 Mass. at 402, 99 N.E.2d at 57. The court held that the expert's testimony did not foreclose other equally likely causes for the damages to plaintiff's land. In *Nass* the expert's attempt to show a causal connection between the presence of a blockade in the south channel and the defendant's dumping of sand on his land adjacent to the south channel was treated as a mere guess or conjecture by the court. No such deficient causal connection is present in Galagan's testimony. Plaintiff's testimony of a "jolt" coupled with "stiffening," in the absence of any other explanation, provided a sufficient predicate for the expert's testimony of a high impedance shock, the most likely cause of which was a potential difference caused by current leakage. And taken collectively plaintiff's testimony and the expert's evaluation permitted a reasonable inference of a probable causal connection between an electrical shock and the fall. *Nass* would require reversal·if there were no evidence that plaintiff received a shock, or if there were no evidence as to what he touched before he fell,[2] but there was evidence as to both.

Galagan did not conduct any tests on the crane to verify his explanation that there must have been current leakage in 1968, while James Kirtley, the defendant's expert and an assistant professor at MIT, testified that the tests he conducted in 1974 did not disclose any current leakage. Galagan's failure to offer real evidence of current leakage does not mean plaintiff failed to establish a prima facie causal connection casting liability upon the defendant. The jurors could have discounted Kirtley's tests because they were performed long after the accident, or they could have discounted his testimony because he had an ongoing contract to do consulting work for GE. Galagan's failure to test for current leakage would entitle the jury to reject his opinion in favor of another explanation, but the defendant was not thereby entitled to have the opinion excluded or · the case dismissed.

The case at bar is most analogous to Gelinas v. New England Power Co., 1971 Mass.Adv.Sh. 429, 268 N.E.2d 336. In that case the plaintiff was working on a conveyor whose highest point was 19 feet above the ground and some 11 feet below the defendant's live wires. In attempting to show how he suffered an electrical shock because of the defendant's negligence, the plaintiff introduced testimony from an expert in the electrical field. The expert stated "[i]t was his opinion that electricity from the defendant's wires arced to the conveyor through a piece of wire hanging from the defendant's wires and going down to within a foot of the conveyor." 1971

ly distinguishable. No evidence existed that the individual defendant's husband was responsible for the fire. The theory that he could have been was mere speculation. This same weakness in the evidence existed in Milch v. Boston Consolidated Gas Co., 341 Mass. 230, 167 N.E.2d 845 (1960), also cited by defendant.

2. The defense theory in this case seemed to be either that defendant received no shock at all (*e. g.,* he slipped while he was rigging his scaffolding) or that he received his shock from touching a live wire. Both of these defenses were matters of the credibility of the plaintiff, and thus for the jury to decide. On the other hand, if the defense had been that while the plaintiff may have gotten a shock, it could equally well have been caused by mere static electricity generated on a cold, dry December afternoon in New England, *cf.* Friend v. Tropis Co., Ltd., 382 F.2d 633 (4th Cir. 1967), cert. denied, 390 U.S. 906, 88 S.Ct. 820, 19 L.Ed.2d 872 (1968), a *Nass* issue might have been more sharply raised. However, our review of the testimony of the experts offered by both sides does not persuade us that the latter defense was raised, and we will not speculate as to whether expert testimony could have supported it.

Mass.Adv.Sh. at 432, 268 N.E.2d at 338. This evidence was held sufficient to allow the jury to find that the defendant was negligent in not maintaining its wires properly, even though such a hanging wire was not actually seen. Similarly in the case at bar, the plaintiff's expert could explain the facts to which plaintiff testified as probably being caused by current leakage without proving that there actually was current leakage. Hence defendant's motion to strike Galagan's testimony was properly denied.

▮▮▮▮ GE argues that the district court erred in denying its motion for a directed verdict. Its claim is that since the dangers of working on the crane were open and obvious, rather than hidden, there was no duty to the plaintiff which the defendant failed to perform. Viewing the evidence in the light most favorable to the plaintiff, as required in considering a motion for a directed verdict, we must treat this case as involving a hidden defect. Plaintiff's expert witness testified that the most probable cause of the shock plaintiff received was a difference in potential between the plaintiff and the I beam he was touching, which difference was caused by current leakage. Massachusetts law is clear that the duty defendant owed this plaintiff, the employee of an independent contractor working on defendant's premises, was the same duty defendant owed its own employees. Sparks v. Kepnes, 339 Mass. 349, 351, 159 N.E.2d 109, 110–11 (1959); Williams v. United Men's Shop, Inc., 317 Mass. 319, 320, 58 N.E.2d 2, 3 (1944). That duty was to disclose hidden defects which GE knew of or could have discovered by exercising reasonable care. Hannon v. Hayes-Bickford Lunch System, 336 Mass. 268, 272, 145 N.E.2d 191, 193 (1957); Gallo v. Leahy, 297 Mass. 265, 268, 8 N.E.2d 782, 784 (1937). The testimony by plaintiff's expert made it a jury question whether

there was a hidden defect which caused plaintiff's injuries. Since GE controlled the premises and maintained the crane, the jury could decide that if it had exercised reasonable care GE would have discovered the defect. Thus the directed verdict was properly refused.[3]

The cases defendant relies on do not change this conclusion. First, defendant cites Burr v. Massachusetts Electric Co., 356 Mass. 144, 248 N.E.2d 492 (1969), where the employee of an independent contractor was electrocuted when he contacted a live wire. The defendant there had hired the contractor to trim trees to prevent them from interfering with electric wires maintained by that defendant. The court held the defendant's motion for a directed verdict should have been granted, saying:

> "Burr knew of the existence and location of the wires; and even if not warned of their danger, he should have realized that they might be energized. There is no duty to warn of dangers which are obvious or could be discovered by reasonable inspection . . . and therefore there was no breach of duty owed by defendant to Burr." 356 Mass. at 147, 248 N.E.2d at 495.

In Burr plaintiff suffered his injury by carelessly touching the wire as he raised himself in the elevated bucket. There was no hidden defect. For example, if the wire, having deteriorated over time, had suddenly broken and hit plaintiff, a jury issue would undoubtedly have been presented. Cf. Gelinas v. New England Power Co., supra (plaintiff injured when electricity arced from defendant's line to conveyor whose highest point was more than 10 feet below wire). Again, if the pole supporting defendant's wire had suddenly collapsed from some hidden defect and brought the wire down on top of the plaintiff, defendant would not have been entitled to a directed verdict merely because the plaintiff knew elec-

---

**3.** Defendant's brief states, "It matters little whether plaintiff was injured by contacting live wires or by contacting I beams energized from current leakage." Since the live wires were an obvious danger while the energized I beams were a hidden danger, there is clearly a crucial difference between the two possibilities.

tricity was dangerous and electricity was the immediate cause of the plaintiff's injuries.

Lawler v. General Electric Co., 1973 Mass.App.Adv.Sh. 255, 294 N.E.2d 535, where the plaintiff received an electric shock while working around a General Electric crane, fails to support defendant's position. The plaintiff in that case, knowing that the defendant owed him no duty to warn of obvious dangers, tried to argue that "irrespective of the red tag procedure [also used there to warn whether the power was turned on], once the crane was turned on a duty arose on the defendant to warn all of the employees of the danger." 294 N.E.2d at 538. The plaintiff was attempting to ignore the red tag safety procedure and use the passage of two weeks time to turn the previously obvious danger into a hidden defect. Since the court rejected this effort to transform an obvious danger into a hidden defect, the result followed that there was no evidence of a hidden defect which could be relied upon to recover. In contrast, this case contained evidence of a hidden defect for which defendant could be held liable.[4]

▆▆▆▆ GE next complains that Kukuruza voluntarily assumed the risk of injury as a matter of law. We do not agree. That Kukuruza knew that electricity and bare wires were dangerous does not mean he assumed the risk of

shock from current leakage. *See* Ryan v. Gray, 316 Mass. 259, 261, 55 N.E.2d 700, 701 (1944) (dim light in hall leading to closet; plaintiff did not assume risk of there being no floor in closet). Plaintiff's fall was precipitated by contact with the I beam, yet there was no evidence that he knew contact with it would be dangerous. "Intelligent appreciation of the risk cannot necessarily be predicated upon a mere knowledge of some danger," McCarthy v. Morse, 197 Mass. 332, 336, 83 N.E. 1109, 1110 (1908), so knowledge of the danger posed by the wires does not establish knowledge that the I beam was also dangerous. *See also* Gobern v. Metals & Controls, Inc., 418 F.2d 290, 296 (1st Cir. 1969); Stewart v. Roy Bros. Inc., 358 Mass. 446, 453, 265 N.E.2d 357, 362 (1970) (plaintiff loading flammable liquid did not assume risk of burns caused by defendant's negligence).[5]

Similar infirmities require rejection of defendant's argument that he proved plaintiff's contributory negligence as a matter of law. Defendant's argument is that since Kukuruza himself had turned on the power and since he knew of the danger the bare wires presented it was contributory negligence as a matter of law to return to work without checking the easily accessible switch. We note that it is a rare case where it can be ruled as a matter of law that defendant satisfied his burden of proving contributory negligence. *See* Halley v. Hugh Nawn, Inc., 356 Mass. 28, 30, 248 N.E.2d

---

4. Defendant apparently would have us hold that the switch box controlling power to the crane was itself the open defect: "The plaintiff is bound to know of defects which are open to view or which could have been if properly examined, as was the crane switch box here." The gravamen of this argument is that no plaintiff (except perhaps a plaintiff who had to have power to the crane to perform his job) could recover for an electricity-connected injury unless he had first assured himself—by *personally* checking the switch box—that the power was off. We cannot accept such a broad rule. While failure to check the switch might be evidence of contributory negligence, defendant had not completely discharged his duty to plaintiff by making a switch box available for plaintiff's inspection. *Lawler* does not state that de-

fendant has no duty to plaintiff if the latter could have checked the switch box. That case turned on the fact that plaintiff ignored a known safety procedure. But Kukuruza testified he was never told about any red tag safety procedure.

5. GE also objects that the trial court failed to charge the jury on the defense of assumption of the risk. The claim is that if the jury had been properly instructed they could have chosen to disbelieve plaintiff's testimony that he was assured it was all right to return to work and thus could have found for GE. This claim is without merit. The trial court's charge adequately informed the jury that if the condition which caused plaintiff's injuries was open and obvious, the verdict should be for the defendant.

5, 7 (1969). This is not such a case. Plaintiff testified that he was assured by GE employees that it was safe to resume work on the crane. Thus the jury could conclude that Kukuruza acted as a reasonably prudent person in not checking the switch. We cannot rule that Kukuruza "has by his own want of ordinary prudence contributed to the injury . . .." Duggan v. Bay State St. Ry., 230 Mass. 370, 377, 119 N.E. 757, 759 (1918).

 GE next asserts that an alleged admission by plaintiff was erroneously excluded from evidence. According to GE, the excluded document—an agreement for compensation from the company providing workmen's compensation for the plaintiff—would have shown that the cause of the accident was not an electric shock but the mere slippage of a board from under his feet. The document, dated some seven weeks after the fall and allegedly signed by the plaintiff, stated in relevant part: "Cause of accident[:] 'Employee was painting a crane 20' above ground when board slipped from beneath his feet causing him to fall on ground.'" One reason the court gave for excluding this document was that it was cumulative evidence. GE had already introduced parts of the plaintiff's interrogatory answers to the effect that the movement of the planking had thrown him to the ground and that the planks were greasy and not capable of being properly secured. And plaintiff had admitted that these interrogatory passages mentioned nothing about a jolt. Apparently the trial court ruled that the statement in the document was cumulative because GE had already presented to the jury its position that the testimony about a jolt was at best an afterthought and at worst a fabrication. But that reasoning was erroneous. A trial judge cannot keep relevant and material evidence from the jury simply because they already have before

them evidence which, if believed, would warrant their adopting the view which the evidence was offered to support. Lipinsky v. Middlesex Supply Inc., 352 Mass. 771, 225 N.E.2d 359 (1967) (error to exclude document, even though it only corroborated much oral testimony); Perkins v. Rice, 187 Mass. 28, 72 N.E. 323 (1904); 1 G. Mottla, Proof of Cases in Massachusetts § 567 (2d ed. 1966).[6]

The exclusion of the compensation claim form was proper for a different reason, however. That a plaintiff made a compensation claim would normally be inadmissible. Goldstein v. Gontarz, 1974 Mass.Adv.Sh. 357, 365–66, 309 N.E.2d 196, 202–03. Thus we are faced with deciding whether the harm of exclusion to defendant outweighed the harm of admission to plaintiff. *See* United States v. Hopkinson, 492 F.2d 1041, 1043 (1st Cir. 1974). Admission of the document might have led the jurors to consider plaintiff's claim unimportant or to refuse him a verdict or to reduce his recovery to avoid double recovery. *See* Goldstein v. Gontarz, *supra.* Weighed against this is the harm to defendant from excluding a representation as to the cause of the accident which was made when plaintiff's memory was most fresh. Two factors convince us that the balance was properly struck in favor of excluding the document. First, the exclusion did not deprive GE of the only evidence it had suggesting that Kukuruza's claim of electrical shock may have been a recent contrivance. As we have already indicated, the defendant did get this defense before the jury through plaintiff's interrogatory answers. Second, GE never attempted to offer into evidence only the statement claimed to be an admission. Had defendant sought to block out the indications that the document was a compensation claim form, instead of trying to introduce the whole document, the anticipated prejudice to plaintiff might have been re-

---

**6.** Prevailing on a claim that the trial court ruled incorrectly on this question is not enough to secure a new trial for the appellant. The error must also be shown to have injuriously affected "the substantial rights of the parties." Mass.Gen.Laws Ann. c. 231, § 132 (1959); Fed.R.Civ.P. 61. We do not reach that issue in this case, however, since we uphold the exclusion of the compensation claim form on another ground.

duced enough to change the equities. In light of these considerations, we do not think the exclusion of the document was reversible error.

(This portion of the opinion, dealing with the common employment defense, is of no precedential value and is not released for publication. *See* 1st Cir. Rules, Appendix B.)

 Relying on Lawler v. General Electric Co., *supra,* where the plaintiff received an electric shock from contacting a live wire on another General Electric crane, GE argues that the trial court incorrectly charged the jury on the standard of care required of it. The specific portion of the charge under challenge was as follows:

> "In assessing the potential danger of a situation you are to consider all of the circumstances which existed at the time of this accident. On this score you may consider that electricity is a force of highly dangerous potential and that those employing it are held to a commensurately high standard of care."

The defendant's objection is that *Lawler* held such a charge to be improper in a case remarkably similar to the case at bar. The language in *Lawler* upon which defendant relies is as follows:

> "The plaintiff argues that the highly dangerous character of electricity *requires* that the defendant be held to a correspondingly high degree of care in its use. . . . The application of this doctrine is limited to those cases where the victim of the accident was, in relation to the defendant, a member of the general public. . . ." 294

N.E.2d at 537 (citations omitted, emphasis added).

This language does not support defendant's claim that the charge was improper. What the Appeals Court of Massachusetts stated in *Lawler* was that the defendant was not *required* as a matter of law to exercise a high degree of care merely because it used electricity. But the court below did not instruct the jury to measure defendant's conduct against a high degree of care. The trial court merely charged the jury that they "may consider" that electricity is dangerous and thus they may decide that reasonable care in the circumstances meant more than ordinary care.[7] The crucial distinction is between requiring as a matter of law that the defendant exercise a high degree of care (which *Lawler* disapproved in a case like this) and allowing the jury to decide that a high degree of care was what was required of a reasonable defendant in the circumstances presented.

*Lawler* certainly does not stand for any rule that the jury cannot be told they can consider all the relevant factors, including the aspect of electricity, which is all the trial court did. Though Massachusetts employers do not owe their employees a general duty of due care, *see* Barrett v. Foster Grant Co., 450 F.2d 1146 (1st Cir. 1971), and the discussion *infra,* that does not always render unnecessary jury consideration of the reasonableness of an employer's conduct. In applying the duty to disclose hidden defects of which the defendant knew or which it could discover in the exercise of reasonable care, the jury must consider

---

7. In explicating the challenged sentence in the charge, one could argue that it states two mandatory rules of law ("that electricity is a force of highly dangerous potential" and "that those employing it are held to a commensurately high standard of care") rather than a possible finding of fact and resultant legal conclusion which the jury may entertain at its option. Though this construction of the sentence might be defensible if the sentence is viewed in isolation, in context the sentence has the meaning given it in the text above.

In introducing this part of the charge, the judge said, "The law does not say how a reasonably careful person would act under those circumstances [the ones shown by the evidence to have existed in this case]. That is for you to decide." This clearly left to the jury the task of giving content to the notion of reasonable care in the circumstances of this case; read in its light the challenged sentence merely calls the jury's attention to one of those circumstances.

what degree of care is reasonable. For example, the reasonable care a jury may require of an employer to discover whether there is a defect in a short ladder may be much less than the reasonable care the jury may require to discover whether there is current leakage on an overhead high-voltage crane. The challenged portion of the charge was in accordance with this principle, and hence was not erroneous, even if it was less carefully phrased than desirable. *See* note 7 *supra*.

GE's last claim is that the trial court improperly charged the jury as to the duty of care it owed Kukuruza. The trial court gave the jury a straight negligence charge,[8] thus imposing on GE the full duties of due care owed to a business invitee from the general public rather than the more limited duty to disclose hidden defects either known or discoverable in the exercise of due care. *See* Powers v. Bethlehem Steel Corp., 477 F.2d 643, 649 (1st Cir.), cert. denied, 414 U.S. 856, 94 S.Ct. 160, 38 L.Ed.2d 106 (1973); Barrett v. Foster Grant Co., *supra*; Gobern v. Metals & Controls, Inc., *supra*. These cases clearly demonstrate that the charge impermissibly broadened defendant's duty. But the fact that the charge was far from exemplary in this respect does not necessarily entitle GE to a new trial. *See* Charles A. Wright, Inc. v. F. D. Rich Co., 354 F.2d 710, 713–14 (1st Cir.), cert. denied, 384 U.S. 960, 86 S.Ct. 1586, 16 L.Ed.2d 673 (1966). Before a new trial can be granted, we must find that the error in the charge prejudiced the defendant's rights. Fed.R. Civ.P. 61. For reasons that follow, we do not think there was such prejudice.

The starting place for our analysis must be the presumption that the jury understood and heeded the charge.[9] This is important because the court charged the jury that "[t]he defendant has no duty to alter or reconstruct its premises so as to make them safe, and the plaintiff is held to assume all obvious

---

**8.** The charge was as follows:

"The degree of care required of the defendant in this case is reasonable care or due care. This standard never varies, but the care which it is reasonable to require of a defendant varies according to the circumstances involved.

"For example, the greater the potential danger, the greater the care which must be exercised.

"In assessing the potential danger of a situation, you are to consider all the circumstances which existed at the time of this accident.

"On this score you may consider that electricity is a force of highly dangerous potential and that those employing it are held to a commensurately high standard of care.

"It is for you to determine what procedures for supervising the use of electricity were actually employed by G. E. on the day and time in question and then determine whether such procedures were reasonably adequate considering all the circumstances.

"If you find that the procedures actually employed by the defendant on the day and time in question were reasonable, then you should find for the defendant.

"If, on the other hand, you find that the procedures followed by the defendant on the day and time in question do not constitute reasonable care under all the circum-

stances, then you should find for the plaintiff.

"In addition, in weighing the reasonableness of defendant's conduct, you are to have in mind that General Electric owed the plaintiff the duty of disclosing to him hidden defects which G. E. knew about or which by exercise of reasonable care it should have known about."

The court's use of the words "In addition" before its correct statement of the defendant's duty makes somewhat difficult an argument that the court cured its earlier error. However, the argument becomes more plausible when the next paragraph of the charge is read:

"The defendant has no duty to alter or reconstruct its premises so as to make them safe, and the plaintiff is held to assume all obvious risks incidental to his work; but the plaintiff is not held to having assumed the risk of a defective condition on the defendant's premises which was not open and obvious to him."

In any event, since we decide *infra* that the error was harmless, we need not consider whether it was cured by subsequent instructions.

**9.** *E. g.*, Cole v. Boston Edison Co., 338 Mass. 661, 669, 157 N.E.2d 209, 214 (1959); Krinsky v. Whitney, 315 Mass. 661, 670, 54 N.E.2d 36, 41 (1944); Whitney v. Bayley, 86 Mass. (4 Allen) 173, 175 (1862).

risks incidental to his work . . .." *See* note 8 *supra.* In light of that fact, we are unable to conceive of any theory by which the jury could have found for plaintiff and still have followed the charge *as a whole.*[10] For example, the jury could not—consistent with the charge—have found the defendant liable because it did not have a red tag procedure until after the accident. That would have required GE to "alter or reconstruct its premises so as to make them safe," and it would have exonerated plaintiff from assuming an "obvious risk incidental to his work."[11] Nor could the jury have found the defendant liable on a theory that it furnished defective boards for planking. That theory was abandoned before trial, for the reason that Kenney supplied the boards, not GE.

A third theory the jury might have entertained was that there was no latent defect, but that a negligent misrepresentation was made by a GE employee that the power was off, and on that basis the

defendant was liable. However, this theory was not squarely presented to the jury. But even if the jury did so conclude, we are not persuaded that the defendant was prejudiced. If GE had been doing this job itself and a GE employee had negligently told a fellow employee that the power was off, with the result that the fellow employee was injured when he accidentally touched a live wire, GE would have been liable to the plaintiff employee. Keeley v. Boston Elevated Ry., 192 Mass. 481, 78 N.E. 490 (1906) (night laborer on railway injured when power turned on to track without notice); *cf.* Hopkins v. O'Leary, 176 Mass. 258, 57 N.E. 342 (1900) (explosives). Since GE owes no less a duty to employees of Kenney than it owes to its own employees, Gray v. Boston, Revere Beach & Lynn R.R., 261 Mass. 479, 159 N.E. 441 (1928), it follows that GE would be liable to Kukuruza if he was injured because a GE employee told him it was safe to go back up when in fact it was dangerous.[12]

---

10. We acknowledge that a jury charge could be so unclear that an appellate court would be unwilling to indulge the presumption that the jury heeded one part of the instruction and thereby limited the apparently broader import of a separate part. However, this charge was not so confusing as to undermine the presumption that the jury understood it and followed it.

11. Just prior to the quoted passage, the judge had instructed the jury: "It is for you to determine what procedures for supervising the use of electricity were actually employed by G.E. on the day and time in question and then determine whether such procedures were reasonably adequate considering all the circumstances." This language can be understood as telling the jury that it is their job to determine the facts and apply the law to them, but even if it were understood as imposing a duty to have a red tag procedure it would not support a jury verdict for plaintiff either because of the absence of causation or because of contributory negligence. Causation would be absent because the plaintiff admitted that he did not check the switch before climbing back up to the crane. Contributory negligence would be present because, as the defendant itself argued, the situation would be that the man who had put the power back on went up to the crane shortly thereafter without any reason to believe the power was off. (This contributory negligence

observation assumes that the sole basis for liability was the absence of a red tag procedure, rather than a jury finding that a GE employee negligently assured Kukuruza it was safe, which is considered separately.)

12. Lawler v. General Electric Co., *supra,* might be read for the proposition that the defendant is not liable for negligently misleading the plaintiff that there is no danger if the danger would have been obvious in the absence of such a statement. In *Lawler* the plaintiff claimed that he had been told that the GE crane involved there had been permanently turned off and that in the event it was turned on again everyone on the job would be notified. 294 N.E.2d at 537. However, there are numerous reasons to distinguish *Lawler.* First, the effect of a negligent misrepresentation was never considered. We will not assume from *Lawler's* silence on this point that negligent assurances of safety create no liability. Second, the facts do not make clear who allegedly made the false representation to Lawler. It is possible that the representation was not made by any GE employee. *See id.* at n. 1. Third, it is likely that the court regarded reliance on the representation as unreasonable, because of other knowledge Lawler had: "In the present case, a well-defined procedure had been agreed to by the contractors in the event the crane wires were energized. The plaintiff knew this procedure, and a reasonable inspection of the switch box

The fourth and only remaining theory for the jury was that of a latent defect. The only way the jury could have imposed liability on the defendant via that theory would be by finding as a fact that a GE employee told plaintiff it was safe to go back up. Absent such a finding, the contributory negligence problems identified in note 11 *supra* would again make it impossible for a conscientious jury to comply with the charge. But neither this finding nor the finding that there was a latent defect would have been prejudiced by the straight negligence charge. In short, on the facts of this case we cannot see how the charge, even given its inadequacies, was prejudicial to the defendant.

Affirmed.

would have revealed the danger." 294 N.E.2d at 538. "The plaintiff cannot ignore the fact that the red tag safety procedure was in effect during this time [the two weeks preceding the accident], indicating that the danger remained open and obvious. There was no reason for the defendant to believe that an additional warning was needed." *Id.* In short, *Lawler* was not treated as a case where a negligent misstatement by defendant was the cause of plaintiff's injury.