PRISCILLA R. RASMUSSEN, administratrix, *vs.* FITCHBURG GAS AND ELECTRIC LIGHT COMPANY (and a companion case[1]).

Worcester.  September 25, 1961. — January 31, 1962.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE, & KIRK, JJ.

*Negligence,* Electricity, Contributory.

A finding of negligence on the part of an electric company toward one electrocuted while stringing an advertising banner across a city street when the banner sagged and a wire holding it came in contact with the company's high voltage wires was warranted by evidence that the company's wires were not insulated for human protection, that the poles carrying them bore no warnings and the crossarms on the poles came within four feet of the buildings on the street, that the street was one of the main streets of the city over which other banners and Christmas decorations had been strung in the past, and that in other parts of the city the company had high voltage wires insulated for human protection; and a ruling that the decedent was contributorily negligent as matter of law was not required in view of evidence that he was not familiar with electricity or wiring.

TWO ACTIONS OF TORT. Writs in the Superior Court dated February 11, 1958, and April 14, 1958.

The actions were tried before *Meagher, J.*

*William E. Bernstein,* for the plaintiff.

*Philip L. Berkeley,* for the defendant.

──────────

[1] The companion case is by the same plaintiff against Giadone's, Inc.

SPALDING, J. These are actions of tort for wrongful death and conscious suffering brought against the Fitchburg Gas and Electric Light Company (Fitchburg) and Giadone's, Inc. (Giadone's). The judge directed verdicts for the defendants in both cases subject to the plaintiff's exceptions. The only exception now pressed by the plaintiff is to the direction of a verdict for Fitchburg on the death count.

We summarize the evidence as follows: Victor Rasmussen, the decedent, was employed by the Caswell-Hawthorn Company (Caswell), which was engaged in the business of awnings, floor coverings, and "odd work." On the morning of July 3, 1957, the decedent, with two fellow employees and the manager, was sent to Giadone's furniture store on the corner of Water Street in downtown Fitchburg for the purpose of stringing an advertising banner (which had been ordered by Giadone's) across Water Street. Caswell furnished the banner and the materials for stringing it. William Giadone (Giadone), Giadone's treasurer, had obtained a permit from the city for the erection of the banner.

On the decedent's arrival at Giadone's premises, Giadone went to an apartment house across the street and obtained permission from the proprietor to string the banner from the chimney on the roof of Giadone's to the fourth floor apartment. The decedent was stationed in the apartment; two other employees were sent to Giadone's roof, the manager remaining below in the street. The plan for stringing the banner was for the decedent to throw a ball of twine across Water Street, to which was tied a rope; the rope in turn was tied to a galvanized wire which held the banner. The decedent was to feed out the banner from the apartment window. The decedent threw the ball of twine to his fellow employees on Giadone's roof and they proceeded to draw the rope across while the decedent released the wire holding the banner. As this was being done, the banner sagged and the wire came in contact with Fitchburg's wires. As a result of this contact the decedent was electrocuted. Fitchburg's poles, which carried the electric wires, were

on the side of Water Street nearer Giadone's, just inside the curb. The poles were about thirty-four feet high and the crossarms attached to them extended to within four feet of the building. There were three wires at the top of the poles, each of which carried a lethal charge of 2,400 volts. The lowest wire was about thirty-three feet from the ground and the highest wire was between six and eleven feet below Giadone's roof and the apartment in which the decedent was stationed.

The wires were covered with "weatherproofing" and some of it had deteriorated. The main purpose of weatherproofing was to protect the wires from the elements. Fitchburg's superintendent was of opinion that weatherproofing was of no value in protecting a human being: "he could get electrocuted as well with that covering as he could if . . . [they] were bare." An expert called by the plaintiff was of opinion that weatherproofing had "some value" for insulating purposes but not enough to prevent injury.

There was evidence that Fitchburg had wires in other parts of the city carrying charges of 2,400 volts or more which were insulated to such an extent as not to be injurious to persons coming in contact with them.

Finally, there was evidence that the decedent was not familiar with wires or electricity; that there were no warnings on the poles of the dangerous nature of the wires; that Water Street is one of the main streets in the city of Fitchburg; and that other banners and Christmas decorations had been strung over Water Street by various persons in the past.

1. This court has said many times that electricity is a highly dangerous force, and those employing it are properly held to a correspondingly high degree of care in its use. *O'Donnell* v. *Boston Elev. Ry.* 205 Mass. 200, 202. *Edgarton* v. *H. P. Welch Co.* 321 Mass. 603, 610. *Clough* v. *New England Tel. & Tel. Co.* 342 Mass. 31, 35. The case at bar presents the question whether a public utility maintaining high tension wires in circumstances like the present has a duty to insulate them for human protection. There

are cases holding that a utility may be liable where the insulation on wires insulated for human protection has been allowed to deteriorate. See, for example, *Illingsworth* v. *Boston Elec. Light Co.* 161 Mass. 583; *Griffin* v. *United Elec. Light Co.* 164 Mass. 492; *Royal Indem. Co.* v. *Pittsfield Elec. Co.* 293 Mass. 4. Possibly these cases may be explained on the ground that, duty or no duty to insulate, the utility had voluntarily undertaken such a duty and, having embarked on such a course, others had a right to assume that the duty would be properly discharged. See *Black* v. *New York, N. H. & H. R.R.* 193 Mass. 448, 450. But in two cases where no insulation of wires was undertaken by the utility company, it was held that the failure to insulate would warrant a finding of negligence in favor of one who could reasonably be expected to come in contact with the wires. *McCrea* v. *Beverly Gas & Elec. Co.* 216 Mass. 495. *Philbin* v. *Marlborough Elec. Co.* 218 Mass. 394. The following language in the *McCrea* case is pertinent here: "The necessity of men climbing trees to do the required work on moths was known, and it is possible to insulate electric wires. The Manchester wires passed through or by trees at fifty places at least. In spite of that no attempt was made by the defendant to insulate the wires at these points. This warranted a finding of negligence . . . . The defendant has assumed in its argument that the plaintiff did not make out a case of negligence . . . unless he showed that the methods of insulation testified to by the plaintiff's experts were in use elsewhere or were not too expensive. We know of no such rule of law. The fact that the care exercised by one bound to exercise care is that usually exercised by persons in like relations is evidence to be considered upon the question of his negligence although it is not of controlling force." 216 Mass. 495, 498. And as we said in the *Philbin* case, "The safety of human life does not necessarily yield to the desirability of furnishing light or power as cheaply as may be to the users thereof." 218 Mass. 394, 397.

Fitchburg's argument that insulation would not be effective with the voltage carried by the wires under considera-

tion is without merit in view of the testimony of its superintendent that it maintains other 2,400 volt wires in the city which are insulated to prevent injury to humans.

The recent case of *Clough* v. *New England Tel. & Tel. Co.* 342 Mass. 31, is distinguishable on the ground that the wires there were along an open rural highway and that any workers likely to come near them "would either request that the electricity be shut off or use equipment which would not come close to the wires." P. 36. We also observed there that a different case would be presented where the defendant "should have anticipated that work might be done in close proximity to the wires." P. 36. The case at bar is such a case. The wires here ran along a main street in the city of Fitchburg, the crossarms being within four feet of the buildings. Furthermore, there was evidence that other banners and Christmas decorations had been strung over the street in the past.

We are of opinion that it was for the jury to determine whether in the exercise of reasonable care Fitchburg should have anticipated that human beings would be directly or indirectly in contact with its charged wires. If it should have so anticipated, it was under a duty to guard against the consequences of such contact; and failure to do so would constitute negligence. See note, 69 A. L. R. 2d 9, 42. See also discussion by Hiscock, J., in *Braun* v. *Buffalo Gen. Elec. Co.* 200 N. Y. 484, 489–491.

2. Fitchburg argues that the plaintiff's decedent was contributorily negligent as matter of law. We do not agree. There was evidence that the decedent was not familiar with electricity or wiring. Whether he was guilty of contributory negligence was for the jury to decide. *McCrea* v. *Beverly Gas & Elec. Co.* 216 Mass. 495, 499. *Royal Indem. Co.* v. *Pittsfield Elec. Co.* 293 Mass. 4, 6. *Fulton* v. *Edison Elec. Illuminating Co.* 303 Mass. 258, 265–266.

3. In the case against Giadone's the exceptions are overruled. In the case against Fitchburg, the exceptions are sustained on the death count, and overruled on the count for conscious suffering.

*So ordered.*