## CHARLOTTE BERGENDAHL[1] *vs.* MASSACHUSETTS ELECTRIC COMPANY.

No. 97-P-1317.

Essex. June 11, 1998. - November 13, 1998.

Present: BROWN, GREENBERG, & LAURENCE, JJ.

*Practice, Civil,* Summary judgment. *Negligence,* Electricity, Standard of care, Duty to warn, Foreseeability of harm.

In an action alleging that an electric company was negligent in its placement of uninsulated power lines, which caused the electrocution death of the plaintiff's decedent when an aluminum ladder she was helping to move touched a live line, the judge correctly concluded, as a matter of law, that the defendant owed no duty of care to the plaintiff's decedent and ordered summary judgment for the defendant, where the record was uncontroverted that the defendant's conduct was in accord with industry practice and the National Electric Safety Code. [719-723, 724-726]

CIVIL ACTION commenced in the Superior Court Department on March 25, 1994.

The case was heard by *Nancy S. Merrick,* J., on a motion for summary judgment.

*Martin J. McNulty (Dana A. Curhan* with him) for the plaintiff.

*Nicholas J. DeNitto* for the defendant.

LAURENCE, J. This matter arises from the accidental death of Marcy Bergendahl, who was electrocuted when an aluminum ladder she was helping to move touched a live 8,000 volt power line owned by Massachusetts Electric Company (MEC). Plaintiff Charlotte Bergendahl, administratrix of her daughter's estate, brought suit against MEC, seeking recovery grounded on the contention that MEC's negligence with respect to the power line caused Marcy's death. A Superior Court judge dismissed the complaint on MEC's motion for summary judgment.

---

[1]Individually and as administratrix.

The facts, essentially undisputed, are as follows. On August 22, 1992, Marcy was visiting her family at their home in Lynn. At the time, her father, Arvid Bergendahl, was outside painting the exterior of his house. Arvid came inside and asked for help moving the ladder he was using. Marcy, her brother Karl, and her fiancé, William Hartman, went outside to assist Arvid. The ladder Arvid was using was an aluminum extension ladder, twenty feet long in a closed position and forty feet long when fully extended, which had been extended to at least thirty-two feet. Affixed to the ladder was a warning label that it would conduct electricity in the event of contact with a live wire.

At the curb in front of the house, between sixteen and eighteen feet from the porch, were two utility poles carrying telephone, cable television, and electric wires. The telephone wires were approximately twenty feet from the ground; the cable television wires were approximately twenty-one and one-half feet high; and two sets of electric wires owned by MEC were approximately twenty-five and thirty feet, respectively, above the ground, at the top of the poles. The topmost electric wires were not insulated. The vertical and horizontal locations of the wires and their uninsulated condition were in compliance with the applicable requirements of the National Electric Safety Code. No trees or other objects masked or obstructed the overhead wires, which were in plain view from the Bergendahl house and from the adjacent public sidewalk underneath the wires, where the foot of the ladder was positioned at the time of the accident.

Marcy was touching either the ladder or her brother, who was holding the ladder, when it came into contact with the topmost electric wires. All four persons were thrown to the ground, but only Marcy was injured severely enough to require hospitalization. She died five days after the incident as a result of her electrocution.

Following completion of discovery by both parties, MEC moved for summary judgment. It contended, on the basis of the undisputed facts set forth above, that Charlotte had failed to present any evidence to show MEC was negligent or that any negligent act or omission on its part had proximately caused Marcy's death. MEC particularly argued that, as matter of law, it had no duty to insulate the wires involved in the accident or to warn Marcy or the others who were moving the ladder. MEC stressed the fact of its full compliance with applicable code

requirements, the well-known dangers of electric wires, and the plain and obvious nature of the wires with which the extended ladder had come in contact.

The plaintiff opposed MEC's motion by asserting the existence of "a genuine issue of material fact that must be determined by a jury: [namely,] whether or not Marcy . . . was one to whom . . . [MEC] owed a duty to insulate its wires." She also argued that in determining such "fact in accordance with Massachusetts case law the jury must weigh whether or not she was a member of 'the general public.' " The only evidence presented in support of the opposition was Karl Bergendahl's affidavit. It merely averred that Marcy was not actually moving the ladder at the time of the accident but only standing beside him, joking with him while rubbing his bald head. The legal argument for the plaintiff's opposition centered on the claim that, under Massachusetts law, electric companies had a duty to members of the general public to insulate their wires; that failure to insulate would warrant a finding of negligence in favor of a member of the general public who could reasonably be expected to come in contact with those wires; and that it was a jury question whether Marcy was a member of the general public.[2] (At no time did the plaintiff allege or argue that the fatal power lines were in any way defective or poorly maintained.)

At the hearing on MEC's summary judgment motion, the court's questions reflected a particular concern with the issue whether any duty to insulate existed, particularly in light of MEC's compliance with code requirements. The plaintiff

---

[2]The submission of Karl Bergendahl's affidavit in support of the opposition to the summary judgment motion was an effort to portray Marcy as a mere bystander not actively involved in moving the ladder, presumably thereby enhancing her status as a "member of the general public" for purposes of the plaintiff's legal argument. (The complaint and the plaintiff's answers to MEC's interrogatories had stated that Marcy had been helping to move the ladder.) We agree with MEC that the affidavit was irrelevant, because the exact manner in which Marcy came in contact with the ladder or the electricity that flowed through it had no bearing on whether MEC owed her a duty or was in breach of that duty, and was therefore a nonmaterial fact. In this connection, this court has repeatedly frowned upon efforts to create disputed issues of fact, in order to preclude summary judgment, by submitting affidavits that contradict a party's previous statements or admissions made during discovery. *O'Brien* v. *Analog Devices, Inc.*, 34 Mass. App. Ct. 905, 906 (1993). *Morrell* v. *Precise Engr., Inc.*, 36 Mass. App. Ct. 935, 937 (1994). *Geller* v. *Allied-Lyons PLC*, 42 Mass. App. Ct. 120, 121 n.2 (1997).

elaborated upon her legal position at the hearing by contending that whether such a duty existed was itself a jury question, in addition to the issues whether the duty was owed to the decedent and whether it was adequately discharged in the circumstances. Soon after the hearing, the court, without opinion, allowed MEC's motion and dismissed the complaint. We conclude that the court's decision was correct on the present record and affirm.[3]

Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as matter of law. *Community Natl. Bank* v. *Dawes*, 369 Mass. 550, 553 (1976). *Cassesso* v. *Commissioner of Correction*, 390 Mass. 419, 422 (1983). Mass.R. Civ.P. 56(c), 365 Mass. 824 (1974). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue "and [further,] that the moving party is entitled to judgment as a matter of law." *Pederson* v. *Time, Inc.*, 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not have the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent's case or "by demonstrating that proof of that element is unlikely to be forthcoming at trial." *Flesner* v. *Technical Communications Corp.*, 410 Mass. 805, 809 (1991). Accord *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991). "If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat [the] motion." *Pederson*, 404 Mass. at 17. "[W]hen a motion for summary judgment is made and properly supported, the non-moving party may not simply rest on pleadings, 'but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.' " *Correllas* v. *Viveiros*, 410 Mass. 314, 317 (1991), quoting from Mass.R.Civ.P. 56(e), 365 Mass. 824 (1974). Conflicts in the summary judgment materials and all logically permissible inferences are made in the motion opponent's favor, *Willitts* v. *Roman Catholic Archbishop of Boston*, 411 Mass. 202, 203 (1991); but mere assertions of the

---

[3]If legally correct, the court's unexplained decision may be affirmed on any sound basis. *Doeblin* v. *Tinkham Dev. Corp.*, 7 Mass. App. Ct. 720, 722 (1979).

existence of disputed facts without evidentiary support cannot defeat the summary judgment motion. *LaLonde* v. *Eissner*, 405 Mass. 207, 209 (1989).

The plaintiff failed to satisfy her burden in opposing MEC's summary judgment motion under these standards. Most critically, MEC's motion presented evidence that the placement of its electric wires in relation to the plaintiff's residence and the sidewalk and the ground satisfied the applicable industry code, which did not require such wires to be insulated. Such a proffer constituted evidence that the defendant was acting in accord with industry practice and consequently was not negligent in the circumstances. See *Corthell* v. *Great Atl. & Pac. Tea Co.*, 291 Mass. 242, 243-244 (1935); *Clough* v. *New England Tel. & Tel. Co.*, 342 Mass. 31, 35-36 (1961); *Upham* v. *Chateau de Ville Dinner Theatre, Inc.*, 380 Mass. 350, 353-354 (1980); *MacDonald* v. *Ortho Pharmaceutical Corp.*, 394 Mass. 131, 139-140, cert. denied, 474 U.S. 920 (1985).[4] Additionally, the materials supporting MEC's motion established that the wires were not hidden or obscured, but rather unobstructed and openly visible from the decedent's perspective. That combined evidence tended to "negate an essential element of the opponent's case," namely, that MEC was negligent with respect to the location and condition of the wires. See Restatement (Second) of Torts § 281(b) (1965). To avoid losing the motion, the plaintiff was obligated to respond by showing with admissible evidence the existence of a dispute as to the fact of MEC's negligence. *Godbout* v. *Cousens*, 396 Mass. 254, 261 (1985).

The plaintiff, however, produced no such admissible evidence — indeed, no evidence of any sort — in response or rebuttal to the motion, except for Karl's misguided affidavit focusing entirely on Marcy's irrelevant physical relationship to the ladder. On that state of the record, the court could justifiably rule

---

[4]Compare 220 Code Mass. Regs. § 125.10(1)(c) (1993) (requiring electric transmission lines to be constructed "according to accepted good practice. . . ."); and § 125.23(3) (1993) (requiring a vertical clearance of at least twenty-eight feet for electric wires running above streets, driveways, and areas accessible to residences). In this connection, we are also aware of no statute or regulation that obligates an electric company to insulate its high voltage transmission lines, except "at all points of attachment" to supporting structures (such as poles) and where a wire "enters a building." G. L. c. 166, § 30. 220 Code Mass. Regs. § 125.26 (1993). See G. L. c. 166, § 34, requiring insulation, to protect the public, of "[p]oles and other structures used to support lines for the transmission of electricity," but not of the lines themselves.

in favor of MEC, notwithstanding customary judicial reluctance to grant summary judgment in negligence cases, see *Manning* v. *Nobile*, 411 Mass. 382, 388 (1991), because "no rational view of the evidence warrant[ed] a finding that the defendant was negligent." See *Young* v. *Atlantic Richfield Co.*, 400 Mass. 837, 841-842 (1987), cert. denied, 484 U.S. 1066 (1988) (no basis for negligence liability when the "risk is of such a nature that it would be obvious to persons of average intelligence"); Diodato *vs*. Grove Mfg. Co., U.S. Dist. Ct., Nos. 90-12291-Z, 90-12880-N-Z (D. Mass. Aug. 29, 1991) (no basis for negligence liability with respect to "a danger as open and obvious as electrical powerlines").

The authorities cited earlier for the proposition that proof of compliance with industry practice militates against a finding of negligence recognize that such evidence is not conclusive upon the issue and can be overcome by countervailing relevant evidence from which a jury could find negligence notwithstanding conformity with industry usage. It is, however, a plaintiff's burden to bring forward such evidence, at the peril of losing the summary judgment battle and thus the litigation war. Compare *Corthell* v. *Great Atl. & Pac. Tea Co.*, 291 Mass. at 243-244 (plaintiff produced no evidence that defendant had reason to anticipate that the shoe the plaintiff was wearing would cause her to be in danger of injuring herself in defendant's store); *Clough* v. *New England Tel. & Tel.*, 342 Mass. at 36 (plaintiffs produced no evidence that defendant had reason to anticipate that anyone would be working in proximity to its wires); *Gelinas* v. *New England Power Co.*, 359 Mass. 119, 125 (1971) (evidence showing that defendant knew individuals such as plaintiff were working close to its live wires, had in fact taken some measures to reduce the risk of those workers coming in contact with the wires, and knew that its wires were of such an age that they might be worn out and dangle down, precluded a defendant's directed verdict); *Upham* v. *Chateau de Ville Dinner Theatre, Inc.*, 380 Mass. at 355-356 (plaintiff's intended factual presentation showing that defendant had been put on notice that a group of elderly persons, including the plaintiff, would be in attendance at its theatre, so that its semidark lighting customarily found in dinner theaters might be anticipated to be insufficient for such patrons to be able to negotiate the steps, prevented a directed verdict for defendant after plaintiff's opening); *MacDonald v. Ortho Pharmaceutical Corp.*, 394 Mass. at 140-141 (defendant's warning booklet mentioning danger of

"abnormal blood clotting" from use of its medication, though in compliance with government requirements, was insufficient to avoid negligence liability in the face of evidence that the failure to mention specifically the risk of "stroke" or of permanent disablement would mislead the average consumer as to the true nature of the dangers involved).

If such rebutting evidence in the plaintiff's favor existed, it is reasonable to assume that it would have been uncovered and produced in the two and one-half years between the filing of the complaint and the filing of the summary judgment motion. Alternatively, if the plaintiff had averred that, for good reason, facts essential to defeat the motion were not yet available but could be presented by affidavit if given additional time, she could have moved therefor under Mass.R.Civ.P. 56(f), 365 Mass. 825 (1974), but she did not. It is particularly noteworthy that the plaintiff submitted no affidavits, presumably readily available from the survivors of the accident, contradicting MEC's evidence that the electric wires were in plain view; or asserting that those involved were unaware of the presence of the electric wires in front of their house; or the possibility that such wires, if they were aware of them, might be uninsulated; or the risks of touching or coming near such wires; or the risks associated with placing ladders of the type being used near electric wires.

The plaintiff seeks to avoid the consequences of her failure to challenge the summary judgment motion with countervailing evidentiary materials by arguing, as she did below, that under Massachusetts law electric companies have a duty to insulate their wires — notwithstanding contrary industry practice — and that the failure to insulate warrants a finding of negligence, or at least makes it a jury question. All of the authorities she relies on, however, are distinguishable. In each case, evidence existed in the record — unlike the situation here — establishing that the defendant electric company was or should have been aware of the fact that individuals similarly situated to the plaintiff would be or had been working near the live wires. It was only on that basis that the court in each case raised a duty to insulate and left it to the jury to determine whether the duty had been properly discharged. See *McCrea* v. *Beverly Gas & Elec. Co.*, 216 Mass. 495, 498 (1914) (men were required by statute to work in trees to control moths and defendant knew of such work); *Philbin* v. *Marlborough Elec. Co.*, 218 Mass. 394, 396 (1914) (same); *Rasmussen* v. *Fitchburg Gas & Elec. Light Co.*,

343 Mass. 515, 517 (1962) (evidence showed that various persons had in the past strung banners close to defendant's live wires, so that it should have anticipated that similar activity, which plaintiff had engaged in, might recur); *Burr* v. *Massachusetts Elec. Co.*, 356 Mass. 144, 147 (1969) (stating in dictum that "in certain circumstances the failure to insulate may warrant a finding of negligence" but citing as the only authority for that proposition the three prior distinguishable cases). Contrast *Urban* v. *Central Mass. Elec. Co.*, 301 Mass. 519, 523 (1938) (no obligation on an electric company to insulate wires on top of a pole located in a playground when no evidence indicated that defendant knew or had reason to know that children would be likely to climb the pole or otherwise come near the wires); *Gelinas* v. *New England Power Co.*, 359 Mass. at 124 (an electric company's duty is "to exercise ordinary prudence and care in the maintenance and use of its power line," a determination of which depends on "the facts of each case.")[5]

The plaintiff cites no Massachusetts case, and we are aware of none, that imposes an unconditional duty on an electric company to insulate its wires in all circumstances. In any event, the issue of the existence of such a duty as the plaintiff avows

---

[5]The plaintiff contends that under Massachusetts law an electric company's duty to insulate arises because several decisions have recognized that "inasmuch as electricity is a highly dangerous force, those employing it are properly held to a correspondingly high degree of care in its use," *Gelinas* v. *New England Power Co.*, 359 Mass. at 124, a recognition that requires (so the plaintiff asserts) a finding of negligence for failure to insulate when "the victim of the accident was a member of the general public," *Burr* v. *Massachusetts Elec. Co.*, 356 Mass. at 147, which Marcy was. As discussed above, however, the rationale for liability in the cases relied on by the plaintiff was not whether the victim was a "member of the general public," but whether "in the exercise of reasonable care [the defendant] should have anticipated that human beings would be directly or indirectly in contact with its charged wires." *Rasmussen* v. *Fitchburg Gas & Elec. Light Co.*, 343 Mass. at 519. *Gelinas*, notwithstanding the quoted observation, relied on evidence presented by the plaintiff that demonstrated facts from which the defendant's negligence could be inferred under the usual negligence standard. 359 Mass. at 124. The *Burr* case is also distinguishable. It involved not the general rationale of foreseeability, but rather a reduced duty of care which was applicable because the plaintiff was an independent contractor engaged to trim defendant's trees that he knew were near the defendant's wires and to whom the defendant owed only the limited duty it owed as employer and landowner, i.e., disclosing hidden defects of which it was or should have been aware. 356 Mass. at 147. See note 4, *supra.*

is a question of law for the court, not a question of fact for the jury. See *Schofield* v. *Merrill*, 386 Mass. 244, 248-249 (1982); *Davis* v. *Westwood Group*, 420 Mass. 739, 742-743 (1995), and cases cited; Prosser & Keeton, Torts § 37, at 236 (5th ed. 1984). To the extent the judge may have ruled against the plaintiff because she was unconvinced that such an unconditional duty to insulate existed in Massachusetts law, the plaintiff has failed to persuade us that the ruling was legally erroneous.

The plaintiff advances an additional contention on appeal not made to the court below: that MEC had "a duty to warn of the dangers of electrical hazards," so that the jury should have been allowed to determine "whether it adequately discharged that duty." There is no merit to this argument, even setting aside the facts that (a) parties are not permitted to raise for the first time on appeal legal theories and arguments that were not presented for the trial judge's consideration, see Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975); *Kagan* v. *Levenson*, 334 Mass. 100, 106 (1956); *Anthony's Pier Four, Inc.* v. *HBC Assocs.*, 411 Mass. 451, 471 & n.25 (1991); *West Broadway Task Force* v. *Boston Hous. Authy.*, 414 Mass. 394, 397 n.2 (1993); (b) Massachusetts law has imposed an affirmative duty to warn of latent or inherent dangers only on a few limited categories of defendants, see *Davis* v. *Westwood Group*, 420 Mass. at 743 (landowners, as to those whose presence on the property can be reasonably anticipated); *Mitchell* v. *Sky Climber, Inc.*, 396 Mass. 629, 631 (1986) (product manufacturers, as to foreseeable users of the product); *Burr* v. *Massachusetts Elec. Co.*, 356 Mass. at 147 (employers, as to their employees and independent contractors), none of which categories apply to MEC vis-à-vis Marcy; and (c) even when an affirmative duty to warn theoretically might be imposed, "[i]f a risk is of such a nature that persons of ordinary intelligence would be aware of it," *Davis, supra* at 743 n.9, or is "obvious or could be discovered by reasonable inspection," *Burr, supra* at 147, the defendant is absolved of the duty.

Most fatally, the cases relied on by the plaintiff for a supposed affirmative duty on electric companies to warn of the dangers of electric wiring do not so hold. Compare *Clough* v. *New England Tel. & Tel. Co.*, 342 Mass. at 35-36 (duty to warn is not imposed per se but only when the electric company "has some reason to suppose that a warning is needed," citing to cases involving landowners and manufacturers); *Rasmussen* v.

*Fitchburg Gas & Elec. Light Co.*, 343 Mass. at 517-519 (noting that "there were no warnings on the poles of the dangerous nature of the wires," but stressing rather that the evidence showed that just such work as the victim had been engaged in when injured by the wires had been done in the past, so that jury questions existed whether the defendant should have reasonably anticipated such activity near its wires and whether it had discharged its consequent "duty to guard against the consequences of such contact"); *Burr* v. *Massachusetts Elec. Co.*, 356 Mass. at 147 (defendant potentially liable not because of general duty to warn but because it was a landowner and employer with a limited duty to disclose known hidden defects to those known to go on the premises who were not reasonably aware of them); *Resendes* v. *Boston Edison Co.*, 38 Mass. App. Ct. 344, 356-357 (1995) (not only was defendant aware of the work that the plaintiff was doing close to its underground lines, but it had already given warnings of the dangers [insufficient, as it turned out], and was under a duty established by the "dig safe" statute, G. L. c. 82, § 42, and previous cases, to mark the location of its underground wires in order to ensure the safety of the area while the work was being done).

Further, whether there is a duty of care is not a jury question, but rather a question of law. *Yakubowicz* v. *Paramount Pictures Corp.*, 404 Mass. 624, 629 (1989). Our courts have long acknowledged that electricity is a highly dangerous force and that those transmitting it are obligated "to exercise care that is commensurate with the risk," *Clough* v. *New England Tel. & Tel. Co.*, 342 Mass. at 35; but they have never imposed a special or heightened duty of care as matter of law on electric companies merely because they transmit potentially dangerous electricity, even in cases involving "a member of the general public."[6]

The proper standard of care is rather the usual one of traditional negligence theory: "to exercise care that was reason-

---

[6]*Lawler* v. *General Elec. Co.*, 1 Mass. App. Ct. 220, 222 (1973), a case involving liability of the electric company as landowner and employer, stated in dictum that electric companies may be held to a "correspondingly high degree of care" in relation to "a member of the general public" regarding its use or transmission of electricity because of electricity's "highly dangerous character." However, the only authorities cited for that dictum were *Gelinas* and *Rasmussen, supra.* Those cases, as described above, do not support the dictum either on their facts or on applicable legal principles. See *Gelinas*, 359 Mass. at 124; *Rasmussen*, 343 Mass. at 518-519.

able in the circumstances," *Clough* v. *New England Tel. & Tel. Co.*, 342 Mass. at 35; and more particularly, "to exercise ordinary prudence and care in the maintenance and use of its power line." *Gelinas*, 359 Mass. at 124. As in all negligence cases, satisfaction of the standard depends "on the basis of the facts of each case." *Ibid.* One such relevant — but not outcome determinative — fact having a bearing on the degree of care appropriate, in light of the totality of the circumstances of each case, is the dangerous nature of electricity, so that the requisite prudence and care might differ, depending on the potential severity and likelihood of the risks posed in different circumstances. See *ibid.*; *Kukuruza* v. *General Elec. Co.*, 510 F.2d 1208, 1217-1218 (1st Cir. 1975) (applying Massachusetts law); Restatement (Second) of Torts §§ 283 & comment d, 290 & comment e, 291, 293, 298 & comments b & c (1965). Cf. *Precourt* v. *Frederick*, 395 Mass. 689, 694-695 (1985) (extent of duty to warn of risks of medical treatment is a varying function of the interplay of the severity of the potential injury and the likelihood that it will occur).

An overview of the Massachusetts cases previously cited dealing with the scope of the duty owed by electric companies with respect to their transmission lines reveals that it is measured by the classic negligence test of foreseeability: for liability to be imposed, the evidence must show that the defendant was chargeable with such knowledge that it should reasonably have foreseen or anticipated the type of injurious risk that eventuated. See *Clough* v. *New England Tel. & Tel. Co.*, 342 Mass. at 36; *Rasmussen* v. *Fitchburg Gas & Elec. Light Co.*, 343 Mass. at 519; *Gelinas* v. *New England Power Co.*, 359 Mass. at 125. While the issue of foreseeability is ordinarily a question of fact for the jury, *Simmons* v. *Monarch Mach. Tool Co.*, 413 Mass. 205, 211 (1992), the court may decide the issue as matter of law (a) in the absence of evidence that the risk which resulted in the plaintiff's injury should reasonably have been anticipated by the defendant (i.e., in such a case, the defendant owed no duty to the plaintiff), *Glick* v. *Prince Italian Foods of Saugus, Inc.*, 25 Mass. App. Ct. 901, 902 (1987); (b) when the risks involved were obvious to persons of average intelligence, *Young* v. *Atlantic Richfield Co.*, 400 Mass. at 842; and generally (c) when no rational view of the evidence would warrant a finding of negligence. *Mullins* v. *Pine Manor College*, 389 Mass. 47, 56 (1983). The decision below is affirmable as matter of law on all three bases.

Even viewing the summary judgment record in the light most favorable to the plaintiff, there was a failure of proof on the plaintiff's part that MEC might reasonably have foreseen that a homeowner would not only use a dangerously conductive aluminum ladder very close to its wires, but would also do so while extending the ladder well above the height of the lowest cables on the utility poles and while attempting to manipulate it on the public sidewalk in front of his house and virtually underneath the wires, rather then locating it on his own property more distant from the poles and wires. This is in stark contrast to all of the cases on which the plaintiff relies, in each of which evidence was brought forward establishing that the electric company knew or should have known of the occurrence or existence near its lines of activities similar to the one that produced the plaintiff's injuries.

In essence, the plaintiff's argument boils down to the proposition that an electric company should anticipate the risk of fatal contact with its lines from the mere presence of nearby residences. Such a rule would, contrary to our law, see *Clough* v. *New England Tel. & Tel. Co.*, 342 Mass. at 35, effectively make the electric company an insurer. No relevant authority implies, much less reaches, such an extraordinary result, which would be entirely inconsistent with the ordinary principles of negligence that our courts have previously held applicable to electric companies. As an intermediate appellate court, "it is [not] . . . our function[] to alter established rules of law governing principles of substantive liability." *Burke* v. *Toothaker*, 1 Mass. App. Ct. 234, 239 (1973).[7] See *Commonwealth* v. *Chase*, 42 Mass. App. Ct. 749, 753 (1997).

*Judgment affirmed.*

---

[7] The grounds of our decision make it unnecessary to address MEC's additional argument that its motion was properly granted because the plaintiff had failed to adduce any evidence that MEC's alleged negligence (rather than the ladder users' failure to lower the ladder to a safe height and to heed the safety warnings on the ladder) had proximately caused Marcy's death.