Henry, Bruce R., J.
The plaintiff, Kenneth Couture (“Couture”), filed suit against the defendants, the Town of Northbridge (“Town”) and Carlo Molinari, Inc., (“Molinari"), a contractor, for damage to his property allegedly due to a construction project in Whitinsville, Massachusetts.[2] The complaint alleged claims of negligent hiring against the Town (count I), negligence against Molinari (count II), respondeat superior against the Town (count III) and private nuisance against the Town (count IV). The Town moves for summary judgment on Counts I, III and IV, and Molinari moves for partial summary judgment on count II.[3]
For the reasons discussed below, the Town’s motion for summary judgment is ALLOWED IN PART and DENIED IN PART. Molinari’s motion for summary judgment is DENIED.
BACKGROUND
The undisputed facts and the disputed facts viewed in the light most favorable to the non-moving parly are as follows.
At all times relevant to this litigation, Couture owned adjoining properties (numbers 119, 121, 123 and 125) located on the north side of Church Street in Whitinsville, Massachusetts. There is a bowling alley in the basement of these properties. Since 1972, Couture has either personally maintained and repaired the premises or has personally supervised those he *141 contracted with to do this work, and he is familiar with the utility connections on the premises. Couture also has experience maintaining other commercial buildings. He asserts that the sewer system has functioned without incident since he acquired the property. The basement has historically suffered some groundwater infiltration and Couture personally installed two primary sump pumps and a third “back up” sump pump to keep the water out. The two primary pumps emptied into the “storm drain pipe” that ran beneath the sidewalk in front of Couture’s property. The storm drain pipe emptied into a storm drain on Church Street. The backup sump pump was connected to the Town sewer line.
In 2003, a construction renovation project commenced in Whitinsville, Massachusetts. The overall project was comprised of two separate but related projects: the Downtown Whitinsville Infrastructure Improvements Project (“Streetscape Project”) and the Underground Utilities Project (“UUP”). The goal of the Streetscape Project was to construct new sidewalks and granite curbs and to add ornamental lighting and decorative trees to Church Street. The UUP would relocate utility lines beneath Church Street. The project was overseen by the Town’s Office of Community Development and the Business Planning and Construction Committee (“BPCC”). Neal Mitchell (“Mitchell”), a member of the BPCC, was designated as a “special municipal employee” of the Town and was charged with monitoring both projects.[4] In this capacity, Mitchell visited the construction site daily and spoke with the contractors on the project to resolve problems and make sure the UUP was on budget.
The Town contracted with Mirra Company, Inc., Massachusetts Electric Company (“Mass. Electric”), and Verizon New England (“Verizon”) to complete the UUP. Both utility companies oversaw their own work. The companies contracted their work to Molinari, an independent contractor which both companies claimed was the only local contractor able to satisfactorily perform the work. There was no history of complaints against Molinari, and there was no indication that the company was unqualified to do the work. Molinari was hired by Verizon and Mass. Electric, and the Town never contracted with it or paid it directly for its services. Mitchell never told Molinari how the work should be done, and Mr. Molinari stated that he took his “marching orders” from the utility companies.
Molinari received the plans showing existing utility lines directly from Mass. Electric and Verizon; these were the only plans that Molinari received. Lateral pipes connecting the Town utilities to individual property lines were not included on these plans. Mark Kuras (“Kuras”) and Jim Madigan (“Madigan”), the current and former Sewer Superintendents of the Whitinsville Water Department respectively, marked the sidewalk along Church Street with green paint to indicate the locations of some of the sewer pipes beneath the sidewalk. Madigan testified that the Sewer Department marked every service, even if they were not sure it was connected, because he wanted to be safe. Drain lines running from privately owned properties into the Town’s drainage system were not marked. Town officials indicated that because they could not be sure that all utilities present under the street could be marked, the utilities were re-located to beneath the sidewalk which was going to be rebuilt as part of the Streetscape Project. The Town attempted to identify all utility lines under Church Street by speaking with Dig Safe, the telephone and electric companies, and the Sewer Department.[5] There is no evidence that Molinari independently determined the location of the drain pipes coming from individual properties to the Town’s drain pipe in Church Street.
At or around the time that Molinari was working on Church Street, the basement of Couture’s property flooded with sewage, while Couture was in Florida. On January 31, 2004, Wayne Couture (“Wayne”), Couture’s brother and tenant, phoned him to tell him that water was rushing in through the sewer pipe in the utility room located in the basement near the bowling alley. Madigan and Kuras responded to Couture’s call about the water on January 31, 2004 and found an obstruction in apipe. The same day, they removed the blockage in under 20 minutes using a jet machine. The cause of this obstruction was never determined, and there is no direct evidence that the construction on Church Street caused the obstruction.[6]
Around late January or early February 2004, Molinari hit a drain pipe leading to Couture’s property. This drainpipe connected the sump pumps in the basement of Couture’s properties to the Town’s drainage system. Molinari replaced the damaged section of pipe with PVC pipe. Molinari contends that the pipe was not properly marked. Madigan examined the pipe Molinari hit on Couture’s property and determined that it was an inactive sewer pipe and he remained on site while Molinari repaired it. Couture was not told that a pipe in front of his building was severed. On February 13, 2004, Couture discovered the basement of his property in which the bowling alley is located was flooded with water and that the sump pumps were burned out. The flooding was removed with the help of pumps provided to Couture by the Northbridge Fire Department. Couture states that simple notification of damage to the drain pipe could have prevented the flooding that resulted on February 13.
Ninety percent of Molinari’s work for the UUP was performed on the same side of Church Street as Couture’s property. Mr. Molinari personally operated the equipment every day as he wanted to be on site in the event of an unforeseen issue arising. Molinari removed part of the sidewalk to complete the work in relocating the utility lines. While the exact timing is unclear, the following events also occurred during *142 construction on Church Street. Couture offered to assist the Town with their digging and requested in writing that he be notified when work was going to be done near his building, but neither Molinari nor the Town ever provided him with such notice. Due to the age and history of the Town, Molinari found many unmarked utilities, including water pipes, drain pipes, sewer pipes, and gas pipes, during the digging process. Molinari struck “two or three pipes on Church Street” and there is some evidence that he damaged a sewer pipe on another property to the west of Couture’s property. The pipes that Molinari struck were unmarked or the mark may have been inaccurately placed. One of these pipes subsequently became clogged with dirt and/or gravel as a result of the construction, which was confirmed when Madigan inserted a camera into the pipe to view the blockage. Molinari subsequently dug up and repaired the pipe. At some point, construction related to the Streetscape Project or the UUP resulted in basement flooding on one occasion at Sports Minded located at 116 Church Street and on two occasions at Subway located at 56 Church Street.
Couture states that since many of the buildings on Church Street have basements and most buildings are located at the edge of the sidewalk under which utilities are located, it is relatively easy to find service lines by inspecting the basements of properties on Church Street. Couture also states that because he personally serviced and maintained the buildings, he had full knowledge of the locations of all utility lines servicing his properties. Couture was never asked by any defendant to help identify the location of utilities.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Corr. 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Commc’ns Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). If the moving party demonstrates there is no genuine issue of material fact, the nonmoving party must “set forth specific facts showing that there is a genuine issue for trial.” Kourouvacilis, 410 Mass. at 716.
I. The Town’s Motion for Summary Judgment
Couture alleges three claims against the Town: (1) that it was negligent in hiring and supervising Molinari’s construction work; (2) that it is liable for Molinari’s negligence under a theory of respondeat superior; and (3) that the Town is liable for creating a nuisance.
A. Negligent Hiring and Respondeat Superior Claims
To the extent that the plaintiff seeks to hold the Town liable on a negligent hiring claim or on a respon-deat superior basis, the claim fails. The Town did not hire Molinari and there is no indication that it controlled Molinari in the performance of its work on the project. As the Town cannot be held responsible for Molinari’s work, the plaintiff cannot prevail on his claims of negligent hiring or respondeat superior. Therefore, to the extent that the plaintiff brings claims of negligent hiring or of respondeat superior liability, summary judgment is ALLOWED on those claims.
B. Negligence/Nuisance Claims
Couture’s theory of liability on the nuisance claim is akin to an allegation of negligence. Couture alleges that the Town’s negligence in marking utility lines created a nuisance in that the improperly located utility lines were hit and caused flooding and damage to his property. More specifically, Couture claims that the Town (specifically the Sewer Department) had a duty to accurately locate and mark the utility lines servicing properties on Church Street. This duty was breached when these services were not accurately located and/or marked and this lack of proper identification contributed to severed pipes, flooding and property damage. While the Town contends that it took great pains to locate all of these utility lines, Couture maintains that there is a genuine issue of material fact as to the feasibility of locating and marking all of the utilities and as to whether the Town took adequate measures to identify all of the utility lines present. Couture asserts that the location of the drain pipe that Molinari severed and repaired could have been determined either through an inspection of the basement or by asking Couture personally, since he was familiar with the locations of utilities servicing his properties.
Given that Town employees did mark the locations of various pipes, Couture may well be able to convince a jury that the Town bears some responsibility for the damage to his property. To the extent that Couture claims negligence on the part of the Town in the marking off of the locations of various pipes and utility lines, that claim survives and summary judgment is DENIED as to such a claim.
“A private nuisance is actionable when a property owner creates, permits, or maintains a condition or activity on his property that causes a substantial or unreasonable interference with the use and enjoyment of the property of another.” Asiala v. Fitchburg, 24 *143 Mass.App.Ct. 13, 17 (1987). Cities and towns are liable for a private nuisance as there can be “no oases of nonliability where a private nuisance may be maintained with impunity." Kurtigan v. Worcester, 348 Mass. 284, 291 (1965) (noting that “[p]ublic policy in a civilized community requires that there be someone to be held responsible for a private nuisance on each piece of real estate"). It is also a well-established rule of nuisance that “(i]t is the duty of the owner to guard against the danger to which the public is thus exposed, and he is liable for the consequences of having neglected to do so, whether the unsafe condition was caused by himself or another.” Nassr v. Commonwealth, 394 Mass. 767, 775 (1985), quoting Gray v. Boston Gas Light Co., 114 Mass. 149, 153 (1873).
A nuisance claim can exist only if there is some underlying theory of liability such as negligence, intentional tort or ultrahazardous activity. See Ted’s Master Service, Inc. v. Farina Brothers Co., Inc., 343 Mass. 307, 311 (1961) (a claim of nuisance must be accompanied by evidence of tortious conduct). See also Delano v. Mother’s Super Market, Inc., 340 Mass. 293 (I960).[7] Because Couture’s allegations of negligence are central to Couture’s nuisance claim, the Town must address its duty in marking out the utilities in order to prevail on its motion for summary judgment. In Bergendahl v. Massachusetts Elec. Co., 45 Mass.App.Ct. 715 (1998), the plaintiff sought to recover for the accidental electrocution death of her daughter that resulted when a ladder the daughter was holding came into contact with uninsulated power lines. The Appeals Court upheld a grant of summary judgment for the defendant when the undisputed record demonstrated that the defendant’s conduct conformed to industry practice and the National Electric Safety Code. “Such a proffer constituted evidence that the defendant was acting in accord with industry practice and consequently not negligent in the circumstances.” Id. at 719. Because the plaintiff in Bergendahl failed to provide evidence that the defendant was negligent in spite of its conformity with industry standards, the Appeals Court found summary judgment for the defendant was appropriate.
Unlike the defendant in Bergendahl, the Town has not demonstrated that the actions of the Sewer Department in preparation for the UUP conformed with applicable standards. The Town described the efforts taken to mark out all utilities prior to Molinari’s work on the project, including contacting Dig Safe, the telephone and electrical companies as well as the Sewer Department. When it determined that all utilities under the street could not be marked to its satisfaction, the Town made the decision to relocate the lines to beneath the sidewalk, which it had funding to rebuild. While the fact that Molinari hit some pipes is alone insufficient to suggest negligence or liability on the part of the Town, it is also impossible for this Court to determine whether the Town was negligent in marking pipes without any evidence as to the standard of care required under the circumstances of this case. Because the Town has not affirmatively shown that Couture will fail to prevail on his claim that the Town was negligent and somehow created, permitted or maintained a nuisance, summary judgment for the Town is not warranted. For that reason, the Town’s motion for summary judgment is DENIED as to the plaintiffs claims of negligence and nuisance.
II. Molinari’s Motion for Summary Judgment
Couture contends that Molinari was negligent in performing his work under the UUP. Molinari moves for summary judgment on the ground that Couture’s allegations of negligence are wholly based on speculation. Further, Molinari argues that even if Couture can prove that Molinari severed the pipes that caused the damage to his property, Couture cannot prove that Molinari was negligent in so doing. Molinari maintains that “the simple act of striking pipes during construction does not establish negligence.”
The question of negligence is one of fact that is not typically resolved through summary judgment. Roderick v. Brandy Hill, 36 Mass.App.Ct. 948, 949 (1994), citing Mullins v. Pine Manor Coll., 389 Mass. 47, 56 (1983). If no rational view of the evidence would allow a jury to make a finding of negligence, however, ajudge may make such a determination as a matter of law. Id. The plaintiff bears the burden of demonstrating the presence of the following elements to a negligence claim: “the defendant committed a breach of the duty to use reasonable care, that the plaintiffs suffered actual loss, and that the defendant’s negligence caused their loss.” Glidden v. Macho, 430 Mass. 694, 696 (2000). “Causation is an essential element of that proof.” Id.
A. Molinari Failed to Meet His Burden as Moving Party
Molinari contends that even if it owed Couture a duty, there was no breach, because it followed the plans provided by Verizon and Mass. Electric as well as the sidewalk markings made by Town officials, because there is no evidence that Mr. Molinari or anyone for whom Molinari was responsible misread the plans or ignored them in any way, and because all of the pipes he severed were either unmarked or improperly marked. However, Molinari has failed to submit any evidence showing the standard of conduct expected of contractors in his situation. See Bergendahl, 45 Mass.App.Ct. at 719 (noting that a proffer of evidence as to the standard of care “constituted evidence that the defendant was acting in accord with industry practice and consequently not negligent in the circumstances”). Without such evidence, this Court is left to surmise whether it was enough for Molinari (1) to rely on plans provided to him by Verizon and Mass. Electric and (2) to continue to rely on those same plans and the markings made by the Sewer Department when he first uncovered unmarked utili *144 ties and then hit unmarked pipes. In order to successfully demonstrate that Couture has no chance of prevailing on his negligence claim at trial, Molinari must submit some evidence of the relevant standard of care, and his assertions that he did what was expected of him under the circumstances will not suffice.
Therefore, because Molinari has failed to provide evidence to negate an essential element of Couture’s case, summary judgment is DENIED.
B. Causation and Expert Testimony
Molinari also contends that Couture will not be able to prove that Molinari was the proximate cause of his injury and that Couture must provide expert testimony in order to establish causation. To establish factual causation, “[A] plaintiff need only show that there was greater likelihood or probability that the harm complained of was due to causes for which the defendant was responsible than from any other cause ... The plaintiffs are not required to eliminate entirely all possibility that the defendant’s conduct was not a cause.” Mullins, 389 Mass. at 58, quoting McLaughlin v. Berstein, 356 Mass. 219, 226 (1969). In addition to showing that the defendant’s negligence was the cause in fact of the plaintiffs injuries, the plaintiff must show that the negligence was also the proximate cause of their injuries. Liebermann, 70 Mass.App.Ct. at 243 (2007), citing Kent v. Commonwealth, 437 Mass 312, 320 (2002). To be the proximate cause of the injury, the injury must be the foreseeable result of the defendant’s conduct. See Heng Or v. Edwards, 62 Mass.App.Ct. 475, 484-87 (2004). The particular act that caused injury need not be foreseen, but the “general character and probability of the injury [must] be foreseeable.” Glick v. Prince Italian Foods of Saugus, Inc., 25 Mass.App.Ct. 901, 902 (1987), citing Carey v. New Yorker of Worcester, Inc., 355 Mass. 450, 454 (1969). Speculation as to the cause of an injury is insufficient to oppose a motion for summary judgment. Glidden, 430 Mass. at 696 (upholding summary judgment for defendant homeowner where plaintiffs offered no evidence as to why scaffolding collapsed and could therefore provide no causal link between their injuries and the homeowner’s duty).
Here, it is evident that a reasonable juror could infer that Molinari was the proximate cause of Couture’s injury. Ninety percent of Molinari’s work was performed on Couture’s side of the street, and Couture cites a history of almost three decades without sewer problems prior to Molinari’s presence on the street. Furthermore, Molinari admits to hitting some unmarked sewer pipes during his work, one of which was confirmed to have become clogged with gravel. Therefore, a reasonable juror could infer that Molinari was the cause of the obstruction removed on January 31, 2004. Moreover, Couture does not rely on mere speculation, but on evidence that suggests a causal link between Molinari’s actions in striking pipes beneath Church Street and the subsequent obstruction and flooding at Couture’s property.[8] If the jury does not believe that Molinari’s hitting of the pipes could have caused the obstruction and resultant damage, Couture will not prevail on his negligence claim.
Molinari further contends that expert testimony is required to show that his actions were the proximate cause of Couture’s damage, because in order to accept Couture’s theory, one needs to understand the mechanics of the Town’s drainage system, which is beyond the province of the fact-finder. Couture counters that no expert is needed to understand that an obstruction downstream will lead to a back-up upstream, as it is within the common person’s understanding that “severing a drain pipe that is used to keep a basement dry may cause that basement to flood.” The Court agrees with Couture that there is no need to have an expert to establish causation. It is well within the province of the jury to conclude that hitting a pipe could have the effect of causing an obstruction as Couture contends.
For these reasons, Molinari’s motion for summary judgment is DENIED.
ORDER
For the foregoing reasons, it is hereby ORDERED that the motion of the defendant the Town of Northbridge for summary judgment is ALLOWED IN PART as to the claims of negligent hiring and respon-deat superior liability and DENIED IN PART as to the claims of negligence and nuisance. It is further ORDERED that the motion of the defendant Carlo Molinari, Inc. for summary judgment is DENIED.

 Whitinsville is one of the several villages that together comprise the Town of Northbridge.

 Count II alleges that Molinari negligently relocated utility lines and severed a sewer pipe leading to damage to Couture’s property. This count also encompasses a separate claim that Molinari caused property damage when construction vehicles struck Couture’s building, but Molinari moves for summary judgment as to the sewage flooding claim only.

 “Special municipal employee” is a status that describes a position and not an individual. The status is conferred by a vote of the board of selectmen, board of aldermen, town council or city council. Positions awarded this status retain it until it is rescinded, and are subject to less restrictive applications of G.L.c. 268A, the conflict of interest law. See Exhibit D of the Town of Northbridge’s Memorandum in Support of its Motion for Summary Judgment.

 Dig Safe does not notify the Town about excavation work, because the Town is not part of Dig Safe.

 On January 31, 2004 Wayne was told by someone he believes was a Town firefighter responding to the call that a “good sized rock” blocked the sewer line. Kuras indicated in a letter to Couture that in his 25 years of working with the Sewer Division, he had never noted any other problems at Couture’s location.

 Couture cites cases for the proposition that there can be nuisance without negligence as discussed here. However, Schleissner v. Town of Provincetown, 97 Mass.App.Ct. 392 (1989), pertains to liability for nuisance with regards to the flow of surface waters. When surface waters are implicated, *145 reasonableness must be considered. In Massachusetts, liability for a private nuisance caused by the flow of surface waters from a landowner’s property to that of an adjoining landowner depends on whether the landowner is making a reasonable use of his land." Trenz v. Town of Norwell, 68 Mass.App.Ct. 271, 275 (2007), citing Tucker v. Badoian, 376 Mass. 907, 916-17 (1978). Because the present case does not implicate the flow of surface waters, the facts in Schleissner are distinguishable from those presented here.
The other case cited for this contention, Bern v. Boston Consol Gas. Co., 310 Mass. 651 (1942), was decided nearly 20 years prior to Ted's Master Service and Delano, which specifically addressed confusion about nuisance claims and sought to clarify nuisance doctrine without expressly overruling decisions in earlier cases like Bern. “The term ‘nuisance’ as a ground of liability usually results in confusion and frequently is a method of avoiding precision in analysis.” Ted's Master Service, 343 Mass. at 311, and Delano, 340 Mass at 296. Both cases stand for the proposition that some underlying liability must accompany a claim of nuisance.

Specifically, Couture contends that Molinari severed a lateral sewer line which caused a rock to enter the main sewer line, leading to an obstruction that caused sewage back flow onto Couture’s property. Couture also contends that Molinari severed a drain pipe linking his property to the Town system and that the severed pipe was not repaired in a timely fashion, which caused the sump pumps to burn out. Because the sump pumps did not work, the groundwater that the pumps were meant to keep out collected in the basement.